(No. 12406.—Reversed in part and remanded.)

ANTHONY F. DELFOSSE, Appellant, *vs.* MARIE C. DEL-FOSSE *et al.* Appellees.

*Opinion filed February 20, 1919—Rehearing denied April 3, 1919.*

1. DEEDS—*possession of deeds by grantee is evidence of delivery.* The possession of deeds by the grantee is evidence of their delivery, and the burden is on one who claims they were not delivered to overcome the presumption of delivery arising out of such possession.

2. SAME—*a deed takes effect upon delivery.* A deed takes effect upon its delivery, and, if once delivered, the fact that it is not recorded does not affect its operation as a conveyance.

3. SAME—*trustee cannot convey trust property against interests of heirs of beneficiary.* Where property is held in trust and the beneficiary dies, the trustee holds the property in trust for the heirs, and he has no right to make a conveyance to the widow and ignore the interests of the children of the beneficiary, even though a deed had been prepared before his death for a conveyance of the property to the widow.

4. SAME—*declarations of grantor in absence of grantee cannot be received to defeat grantee's title.* The declarations of a grantor in a deed when the grantee is not present, whether made before or after the execution of the deed, cannot be received to defeat the grantee's title, unless, with full knowledge of them, the grantee acquiesces in or sanctions them.

5. SAME—*presumption of undue influence from fiduciary relation does not apply to conveyance from husband to wife.* Where a conveyance is made to a person occupying a relation of trust and confidence to the grantor and confers a beneficial interest on the grantee it is presumed that it was obtained through fraud or undue influence and the burden of proof is on the grantee to rebut the presumption; but this doctrine has no application to the relation of husband and wife.

6. SAME—*conveyance from husband to wife is presumed to be a gift.* Where a husband voluntarily conveys land to his wife or procures its conveyance to her by a third person a presumption arises that he intends to make an absolute gift to her, and to overcome this presumption it must appear that there was an obligation on her part to hold the property in trust for him.

7. TRUSTS—*constructive trust arises only from fraud in procuring conveyance.* A constructive trust will only arise in case of some fraud or advantage taken in the procurement of the conveyance to the alleged trustee, and the mere breach of a grantee's oral promise to convey does not constitute such fraud as takes the case out of the Statute of Frauds, but there must be an element of fraud accompanying the promise and by means 'of which the acquisition of the legal title is wrongfully consummated.

8. SAME—*what does not make wife trustee in conveyance from her husband.* Where a husband voluntarily conveys his property to his wife, the mere fact that he expects her to permit him to control and dispose of the property does not create any trust in her for his benefit.

APPEAL from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding.

JOSEPH H. MUHLKE, for appellant.

HOLT, CUTTING & SIDLEY, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

Antoine J. C. Delfosse died on March 25, 1913, leaving a widow, Marie C. Delfosse, and three sons, two daughters and a grand-daughter, the daughter of his deceased son, Charles, as his heirs. On June 16, 1913, Anthony F. Delfosse, one of the sons, filed a bill in the superior court of Cook county against the widow and the other heirs, alleging that the deceased at the time of his death owned five parcels of real estate in Cook county, but that he had caused the title to four of such parcels to be conveyed to Marie C. Delfosse by deeds which he had caused to be delivered to her upon her express promise that she would hold the title in trust for Antoine, who was to be the owner of the

premises; that she would not record the deeds except upon his express request, and that upon his death the premises should be conveyed to his children as tenants in common, in equal shares, subject to the life estate of Marie therein, and that she would, upon demand from Antoine, re-convey the premises to him or to any person under his direction; that after receiving the deeds conveying the property to her, she, without the knowledge or consent of Antoine, in violation of her promises and trust and against her express agreement, caused them to be recorded, and that the record title was in her. It was alleged that the record title to the other parcel of real estate was in the name of Henry G. Dinet, who held the title in trust for Antoine Delfosse in his lifetime and now holds the title in trust for his heirs-at-law. As to two of the parcels conveyed to Marie C. Delfosse it was alleged that after the conveyance to her was recorded, she, together with her husband, conveyed the premises to Henry C. Barthel, Jr., who thereupon conveyed them to Antoine Delfosse; that after the conveyances were delivered to Antoine he did not record them but kept them in a safety deposit box to which Marie C. Delfosse had access, and that she afterward, without the knowledge or consent of Antoine, abstracted from the safety deposit box the deed executed by her and her husband to Barthel and has since retained it or has destroyed it. The bill alleges that when Antoine Delfosse discovered that Marie C. Delfosse had recorded the deeds to her he demanded of her that she immediately convey the premises to him, but she refused to comply with the demand, though admitting that the premises were conveyed to her in trust and that she did not claim to hold title to the property except the record title, and that she would hold it in trust as she had formerly agreed. Later an amended bill was filed, in which it was averred that Antoine Delfosse caused the deeds to be executed as alleged in the original bill, but that he hesitated to have the conveyances executed until Marie C. Delfosse

assured him that she would honestly and faithfully carry out the conditions and limitations of the trust as alleged in the original bill; that Marie intended to procure the title in her name and afterwards to refuse to carry out her promises, and thus defeat the intention of Antoine and obtain an unlawful and an unconscionable benefit for herself, but that Antoine, believing and relying on her assurances and promises that she would not record the deeds and would carry out the limitations, promises and conditions as aforesaid, and relying on the relationship between him and his wife, caused the deeds to be executed and delivered to him, and after receiving them deposited them in a safety deposit box to which Marie had access, and afterwards she, without the consent or knowledge of Antoine and in violation of her promises and assurances and pursuant to her intent and purpose to defraud him and obtain the title in her own name, secretly abstracted the deeds from the safety deposit box and filed the same for record, though they had never been delivered to her. This amended bill included another parcel of real estate not included in the first, the title to which it was alleged was held, at the time of Antoine Delfosse's death, by William Hornberg in trust for Antoine and remained in him after the death of Antoine, but that afterwards, on June 17, 1913, Marie C. Delfosse procured from Hornberg and his wife a deed conveying the title to Marie. Afterward a second amended bill was filed which omitted all allegations of misrepresentation or promises made by Marie C. Delfosse, alleging only that Antoine Delfosse caused deeds to be executed of which he informed his wife, and further advised and explained to her that the property so deeded belonged to him but was being deeded to her to be held in trust for his use and benefit; that the deeds were not to be recorded except upon his express request and upon demand she was to re-convey the premises to him, and if he should die before making such demand then she was to convey the premises to his children, share and share alike,

subject to her dower estate, which she should retain, but that the deeds never were delivered to her; that without the consent or knowledge of her husband she secretly abstracted the deeds from his safety deposit box and wrongfully filed them for record; that he frequently demanded a re-conveyance of the property to him but that she refused to make such conveyance. The prayer was for a partition of the premises.

The answer of Marie C. Delfosse and Cecelia Delfosse, two of the defendants, denies that Antoine Delfosse was the owner of the property in controversy at the time of his death; admits that the title had been held for him by the various persons named, as alleged in the bill, and that he caused the deeds to Marie C. Delfosse to be executed, but denies that the deeds were deposited by him in his safety deposit box and alleges that they were delivered to Marie for the purpose of vesting the title to the premises in her without any restrictions or conditions. It denies that Antoine informed his wife of the execution of such deeds and explained to her that the property belonged to him and was being deeded to her to be held in trust for his benefit; that the deeds were not to be recorded except upon his express request; that upon demand she was to re-convey the premises to him, and that if he should die before making demand for such re-conveyance she was to convey the premises to his children, subject to her dower estate. It denies that the deeds were recorded without the consent or knowledge of Antoine or that Marie abstracted them from his safety deposit box, or that he ever demanded of her that she re-convey the premises to him. The answer denies that Marie C. Delfosse executed a deed to Henry C. Barthel, Jr., or that he executed the deed to Antoine Delfosse, or that Marie abstracted any deed executed by her and her husband to Barthel from the safety deposit box or has retained or destroyed any such deed. As to the parcel of real estate alleged in the second amended bill to

be held in trust by Henry G. Dinet, the answer alleges that such real estate was held in trust by Dinet for Marie C. Delfosse, and that on March 8, 1907, at the same time the other deeds were executed, Dinet executed a deed conveying said premises to Marie, subject to no conditions or limitations whatever; that she accepted the deed without any agreement, condition or limitation whatever, and that she delivered the same to her attorney for the purpose of having it recorded, but that some time thereafter her attorney informed her that Joseph T. Delfosse had requested her attorney to deliver the deed to him and he had done so, and Joseph either now has the deed in his possession or has disposed of it without the knowledge or consent of Marie, and she claims to be, and is, the owner in fee simple of the premises and is entitled to a decree directing the conveyance of the legal title to her in case the original deed is not produced and delivered to her. As to the property held in trust by William Hornberg, the answer alleges that it was purchased by Antoine Delfosse with the joint funds of himself and his wife but that the premises were conveyed to the complainant, who afterwards, at the request of Antoine and Marie C. Delfosse, conveyed the premises to Hornberg, who held the legal title to the same although the equitable title was in Marie; that it is not true that Hornberg was induced to execute the deed to Marie by fraud and misrepresentation, but that such deed was given in direct accord with the wish and request of Antoine Delfosse, and was recorded in order that the legal title to the premises might be vested in Marie, where the equitable title had long been. The answer also set up the Statute of Frauds and claimed the benefit of its provisions. The court dismissed the bill for want of equity and the complainant appealed.

The question of first importance in the case concerns the delivery of the deeds to Marie C. Delfosse, and upon this question the evidence is extremely conflicting. Antoine

J. C. Delfosse and his wife came to this country in 1863, going first to Madison, Wisconsin, and then to Chicago. He was a bricklayer and at first worked at his trade by the day. Afterward he bought property, built on it and sold it, and continued to do so, and by 1896 was the owner of several parcels of real estate, including all of the property in controversy in this case. Mrs. Delfosse testified that she had $3000 or $4000 which she got from her father and mother, with which one of the parcels, called the May street property, was bought. Antoine afterwards conveyed two parcels of the real estate to Henry G. Dinet, two to his son Joseph, one to his son Henry and one to William Hornberg. His purpose in conveying his property in this way is not definitely explained by the evidence, but it is unimportant, for there are no allegations in the answer or claims in the argument that it was of such a character as would prevent his obtaining in a court of equity a reconveyance of the property. On March 8, 1907, deeds were signed and acknowledged by all persons holding the title for Antoine Delfosse except Hornberg, which purported on their face to convey the title absolutely to Marie C. Delfosse. A deed was prepared to be executed by Hornberg but was not actually executed until after Antoine's death. These deeds were prepared at the request of Antoine. The son Joseph testified that a few days before they were executed he had a conversation with his father, at which Marie C. Delfosse was present, about restoring the property to Antoine so that he could control it himself. In that conversation he says his father said: "I want you to get all the deeds from Henry Dinet and Henry Delfosse and Oscar Lambeau and yourself made out to Marie C. Delfosse; I won't record them; I won't have them recorded." He said he wanted to get all of his property back in her name so that he could get it from her at any time he wanted it. He didn't want his property scattered around among a various lot of different people. The

deeds were prepared and were all executed together in the office at the store of Joseph. Joseph T. Delfosse, Henry G. Dinet and Henry A. Delfosse all testified to what occurred at that time. Their testimony is that Antoine, Joseph and Henry Delfosse, Henry G. Dinet, and Charles Delfosse, who has since died, were present; that Mrs. Delfosse and Mrs. Perry, who was the notary public who certified to the acknowledgment of the deeds, were not present, and that the deeds, after being executed, were delivered to Antoine and taken away by him. Mrs. Delfosse and Mrs. Perry testified to the execution of the deeds at the same place and at the same time; that they were present and Antoine Delfosse was not present, and that the deeds were delivered to Mrs. Delfosse and taken away by her. Joseph Delfosse testified that within the next two, three or four months he saw the deeds twice in his father's safety deposit box. On the other hand, Mrs. Delfosse testified that she saw the deeds in the dining room at her home before they were signed. Her husband showed them to her, and that afterwards she saw them at her son Joseph's drug store in the Columbus Memorial building, when she brought them from the house to get them signed with her name on them. At that time Henry and Joseph Delfosse and Henry G. Dinet, the grantors in the deeds, were present. She said she wanted to get it in her name, and Joseph said "All right," and signed, called the others and then called Mrs. Perry to come in, and Mrs. Perry put her seal on, and Joseph folded them up and gave all of them to her; that Dinet asked as a favor that she would not have the deed of the Jefferson property which he had executed recorded on account of the Ohio street property, which he wanted to get settled first. She took the deeds home and gave them to her husband, and he read them and put them on the sideboard in the dining room, with the bread plate on top. They were in a big envelope and stayed on the sideboard about six months, until he sent her to get them recorded.

She took them to Streyckmans, the attorney, and told him to record them, except the deed to the Jefferson property, which she did not want recorded because Dinet asked her, as a favor to him, not to have it recorded. She had a safety deposit box jointly with her husband in the Chamber of Commerce vaults, but she never took any deeds out of that box, and these deeds never were in the box but were at home. She testified that she never knew Henry C. Barthel and never made any deed to him. After that she collected rents from the property, made leases in her own name, and her husband collected rents and gave them to her, the bank account was kept in her name and she signed checks on it, her husband used to carry checks signed in blank by her, and landlord's five days' notices of non-payment of rent were given, signed in her name by her husband as her agent. Mrs. Emma E. Brown testified that she was the notary public who certified to the acknowledgment of the deeds. She was then Mrs. Perry. She testified that Mrs. Delfosse was present at the time the deeds were acknowledged in the drug store of Dinet & Delfosse, in the Columbus Memorial building, in which her office was; that she was called into the drug store and Mrs. Delfosse was there and Mr. Delfosse was not; that Joseph Delfosse said, "I have some papers," and called Henry Delfosse, and Dinet stepped in with the papers and she signed them; that Joseph examined them, folded them carefully and piled them up on his desk, put a rubber band around them and handed them to his mother. Ellen Mattes testified that she knew Mrs. Delfosse and her husband and visited them often; that she saw some papers when she was in the dining room at their house; that Antoine Delfosse took some papers from the sideboard, handed them to her and said they were deeds; that she looked at them and saw that they were not recorded, and she said, "Why, these are no good; they are not recorded," and he said to his wife, "Yes, that is right; you go the first thing in the morning and have these re-

corded." She said first that this occurred in 1897 but afterwards corrected it to 1907. Cecelia Bender is a niece of Antoine and Marie Delfosse and visited them frequently. She was there on the fourth of March, 1907,—her aunt's birthday. Mr. and Mrs. Delfosse and daughter Cecelia and the witness were the only ones present. Her uncle showed her some deeds that he took from the sideboard and said those were the deeds to the property, and he asked her aunt to go to the boys and see that they signed them, because he was afraid they would not. She saw them again in June or July, and then he showed them to her and said, "Here; these are the deeds; mamma had them signed." She saw them many times on the buffet. They were there all the time and there was no secret about it.

Both Henry G. Dinet and Joseph T. Delfosse testified to conversations with Marie a week or two or three weeks after the execution of the deeds, in which they told her not to record them. If the deeds were in the custody of Antoine Delfosse and had not been delivered to her it would not have been in her power to have them recorded and no reason is suggested for the giving of this advice. On October 26, 1907, Joseph T. Delfosse assigned to Marie C. Delfosse an insurance policy on the property described in his deed to Marie, and does not explain why this assignment was made if the deed had not been delivered and Marie did not have the title to the property. Joseph negotiated in her own name a lease of the property which he had conveyed to Marie, and it was signed by his father as her agent. The property which Joseph conveyed was subject to a mortgage for $20,000. In 1909 this mortgage was renewed for $15,000 to the First Trust and Savings Bank. The new mortgage was executed by Marie C. and Antoine Delfosse. If the deed to Marie had not been delivered the title remained in Joseph and the mortgage was of no effect. The records of the safety deposit company were introduced in evidence by the complainant, and they showed that the

safety deposit box was visited between March 8, 1907, and October 14, 1907, (when the deeds were recorded,) four times,—twice by Antoine Delfosse, on July 2 and September 23, and twice by Marie C. Delfosse, on August 2 and August 16. If this record is correct Joseph Delfosse could not have seen the deeds twice in the safety deposit box, for July 2 was the first time after the deeds were executed, on March 8, that Antoine visited the deposit box, and the deeds could not have been left there before that date. If they were abstracted by Mrs. Delfosse they could not have been there in September, for the only times when she visited the box were in August.

The deeds were in the possession of the grantee and her possession is evidence of their delivery to her. The burden is on the complainant to overcome the presumption of delivery growing out of such possession, and this burden has not been sustained. It is true that the three grantors testified that the deeds were handed to Antoine Delfosse, while only the grantee and the notary testified to the delivery to Mrs. Delfosse, but this evidence is not inconsistent with the delivery of the deeds by Antoine himself to his wife. There is evidence that after he obtained the deeds,—if he did obtain them,—they were at his house on the sideboard in the dining room and that he directed his wife to have them recorded, and this testimony is entitled to at least as much weight as that of Joseph Delfosse that he saw the deeds in the safety deposit box, especially in view of the evidence in the record in regard to the visits made to the box by Antoine. Joseph's act in assigning the policy of insurance to his mother is not consistent with his claim that she was not the owner of the title. The request to her not to record the deeds is inconsistent with the statement that they had not been delivered to her. The negotiation of the lease by Joseph and its execution by Antoine in the name of his wife are only consistent with the delivery of the deeds. So, also, the execution of the mortgage by Antoine was a rec-

ognition of the title in his wife, acquired by the delivery of the deeds, and a ratification of their delivery. There is no preponderance of the evidence in favor of the complainant but the preponderance is the other way, and is in accord with the presumption that the deeds were delivered. This conclusion also applies to the deed of Henry G. Dinet, which is not recorded. It was executed at the same time, and the testimony is that it was delivered along with the other deeds. If they were delivered it was delivered, and the fact that it was not recorded does not affect its operation as a conveyance. It took effect upon its delivery, and its operation was not destroyed by anything that happened to the deed afterward. Evidence was introduced of the payment of taxes on the property by Antoine Delfosse from 1906 to 1912. This evidence is a circumstance to be considered but is not of much weight in the case, because the evidence shows that the management of the property was conducted by Antoine in the name of his wife. There was also evidence that after the recording of the deeds Antoine was very much dissatisfied and that there was some ill-feeling between the husband and wife in regard to the recording of the deeds, but these circumstances do not affect the question of the delivery of the deeds at the time of their execution.

The execution of the deed by Marie C. and Antoine Delfosse to Barthel is shown by a preponderance of the evidence. Mrs. Delfosse denies the execution of this deed, but it is testified to by Barthel, to whom it is claimed to have been made, who executed a conveyance back to Antoine, and by Henry Dinet and Joseph Delfosse, who were acquainted with the transaction and saw both of the deeds at the time of their execution. They are corroborated by two other witnesses who testified to having seen Mrs. Delfosse and her husband execute a deed in their son Charles' office about the date of the supposed deed to Barthel. They both saw the deed, and one of them testified that

it was a warranty deed to Barthel conveying two pieces of property. The other was unable to state the contents of the instrument.

Although the deed for the tract held by Hornberg was prepared for execution at the same time as the other deeds it was not actually executed until after Antoine Delfosse's death. Hornberg held the property in trust for Delfosse and on his death he held it in trust for his heirs, and he had no right to make a conveyance to Mrs. Delfosse and ignore the interest which the children had inherited from their father. As to this property and the property included in the deed to Barthel the complainant is entitled to the relief prayed for, but as to the remainder of the property he is not.

The court refused to admit evidence of declarations and conversations of Antoine Delfosse, after the recording of the deeds and out the presence of Mrs. Delfosse, in regard to their disagreements and his effort to get the property back and his desire to file a bill to set aside the deeds. This evidence was properly excluded, for the law is well settled that the declarations of a grantor in a deed when the grantee is not present, whether made before or after the execution of the deed, cannot be received to defeat the grantee's title, unless, with full knowledge of them, the grantee acquiesces in or sanctions them. *Dickie* v. *Carter,* 42 Ill. 376; *Bentley* v. *O'Bryan,* 111 id. 53; *Bennett* v. *Stout,* 98 id. 47; *Higgins* v. *White,* 118 id. 619; *Guild* v. *Hull,* 127 id. 523; *Burt* v. *Quisenberry,* 132 id. 385; *Potter* v. *Barringer,* 236 id. 224; *Francis* v. *Wilkinson,* 147 id. 370; *Shipley* v. *Shipley,* 274 id. 506.

It is insisted that Marie C. Delfosse wrongfully and fraudulently acquired the legal title to the property through the confidential relation existing between her and her husband, and it should therefore be decreed that she holds the title by a constructive trust for the use and benefit of his heirs. There is not the slightest evidence that Mrs. Del-

fosse ever requested that the deeds should be made to her or exerted any influence over her husband to that end. The execution of the deeds was his plan entirely and she merely accepted the title. It is true, in general, that where a conveyance is made to a person occupying a relation of trust and confidence to the grantor which confers a beneficial interest on the grantee it is presumed that it was obtained through his fraud or undue influence and the burden of proof is on the grantee to rebut the presumption, but this doctrine has no application to the relation of husband and wife. Where a husband voluntarily conveys land to the wife or procures its conveyance to her by a third person a presumption arises that he intends to make an absolute gift to her, and to overcome this presumption it must appear that there was an obligation on her part to hold the property in trust for him. One person may voluntarily assume a confidential relation toward another, and if he does so he cannot afterward do any act for his own gain at the expense of that relation. A constructive trust, however, will only arise in case of some fraud or advantage taken in the procurement of the conveyance. The rule is approved in *Lantry* v. *Lantry,* 51 Ill. 458, that in order to create a trust there must have been some fraud, active or passive, in procuring the conveyance. The mere breach of a promise to convey is not sufficient. "The distinction is this: If A voluntarily conveys land to B, the latter having taken no measures to procure the conveyance, but accepting it and verbally promising to hold the property in trust for C, the case falls within the statute and chancery will not enforce the parol promise. But if A was intending to convey the land directly to C, and B interposed and advised A not to convey directly to C but to convey to him, promising, if A would do so, he (B) would hold the land in trust for C, chancery will lend its aid to enforce the trust, upon the ground that B obtained the title by fraud and imposition upon A. The distinction may seem nice

but it is well established. In the one case B has had no agency in procuring the conveyance to himself; in the other he has had an active and fraudulent agency. In the one case he has done nothing to prevent a conveyance to the intended beneficiary; in the other he has by false promises diverted to himself a conveyance about to be made to another." In *Davis* v. *Stambaugh,* 163 Ill. 557, it is said that the mere refusal of a trustee to execute an express direction or the denial of the existence of the trust by the trustee does not constitute such fraud as takes the case out of the statute. There must be an element of fraud accompanying the promise and by means of which the acquisition of the legal title is wrongfully consummated. This doctrine is approved in *Ryder* v. *Ryder,* 244 Ill. 297, and *McHenry* v. *McHenry,* 248 id. 506, and other decisions. There is no evidence that Mrs. Delfosse made any promise to procure her husband to have the deeds made to her. She merely accepted the conveyances. If she had made an express promise to hold the title for the benefit of her husband or his heirs and had afterward repudiated it, under the decisions which have been cited she could not have been held to its performance against her claim of the benefit of the provisions of the Statute of Frauds. But no such promise is either alleged or proved, and the mere fact that her husband expected that she would permit him to control and dispose of the property would not create any trust in her for his benefit.

The decree will be affirmed except as to the properties described in the Hornberg and Barthel deeds and as to those parcels it will be reversed and the cause will be remanded, with directions to enter a decree in accordance with the views expressed in this opinion. Each party will pay one-half the costs of this court.

*Reversed in part and remanded, with directions.*