LONNIE WHEWELL, Plaintiff-Appellant, *v.* KENNETH COX, Defendant-Appellee.

Fourth District   No. 14344

Opinion filed October 28, 1977.—Rehearing denied November 30, 1977.

L. Allan Watt and Ronald F. Robinson, both of Winchester, for appellant.

Richard Mann, of Hutchens and Mann, of Winchester, for appellee.

Mr. JUSTICE SLATER delivered the opinion of the court:

This action arises out of a complaint filed on April 23, 1976, in the circuit court of Scott County requesting that the court establish a constructive trust over a farm purchased by the defendant, Kenneth Cox. The basis for the complaint was that defendant occupied a confidential or fiduciary relationship to the plaintiff and had violated this relationship by not conveying certain farmland (hereinafter called "the Jones farm") to the plaintiff pursuant to an oral contract. Defendant denied the plaintiff's allegations and counterclaimed against the plaintiff requesting possession of the Jones farm, which plaintiff occupies, and for an accounting to be taken between the parties to determine the crops raised, the livestock pastured, and the rent due from the plaintiff. A bench trial of these issues was concluded on February 7, 1977, with verdict for the defendant on all issues except as to the issue of an accounting which was postponed pending the appeal.

Plaintiff, a farmer, was living on and operating a farm at Bluffs, Illinois, at the time of the occurrence. Defendant is employed by Fressen, Inc., and is in charge of the yards at that company which is located at Bluffs, Illinois. The plaintiff's wife is a sister to defendant's wife and the families have often visited each other in their homes. Because of their friendship, the plaintiff took a job with defendant's company when the defendant told plaintiff's wife he needed a truckdriver.

On March 19, 1972, the plaintiff and his two sons were working on the Bluffs farm when the defendant drove in and approached them. At this point there is a difference in the record as to what was said between the plaintiff and the defendant. The plaintiff and his sons testified that the defendant asked the plaintiff if he was going to buy the Jones farm at the forthcoming auction and that when the plaintiff replied that he did not have sufficient finances, the defendant stated, "How would it be if I bought it for you." The plaintiff and his sons testified that the plaintiff responded by saying that would be fine if everything could be worked out. The defendant, on the other hand, states that he did not offer to buy the Jones farm for the plaintiff at that time nor any other time but only wanted plaintiff's advice concerning the value of the farm. Following this conversation, the plaintiff and the defendant inspected the Jones farm but

no more mention was made concerning the purchase of the farm by the defendant for the plaintiff.

The only other discussion before the actual purchase of the Jones farm by the defendant was at the defendant's home on the eve of the auction. The defendant's wife had called the plaintiff's wife and asked them to come to defendant's residence to discuss the purchase of the Jones farm. Once again there is a difference of opinion as to what transpired at this discussion. Plaintiff and his wife alleged that defendant thought that plaintiff could afford the farm but plaintiff did not agree and expressed doubts as to his ability to pay for the farm. Then the defendant asked the plaintiff for an estimate on how high the defendant should go in the forthcoming auction. The plaintiff estimated about $300 per acre and then the defendant's wife said, "Give them whatever it takes to get it for them." Defendant's testimony concurred with plaintiff's as to the fact that plaintiff had told him he did not have the financial resources to purchase the Jones farm but neither defendant nor his wife remember anything about the defendant's wife's statement that the defendant would buy the land for the plaintiff.

On March 24, 1972, the Jones farm was acquired by defendant for a bid of $213 per acre. According to plaintiff's wife, the defendant called her the same day and told her, "We got the farm." Defendant does not recall whether he made such a phone call.

Following the purchase of the Jones farm, the plaintiff prepared the ground for the planting of crops and on May 29, 1972, plaintiff moved to the Jones farm and commenced remodeling the farm and making improvements. For the ensuing four years, plaintiff lived on the Jones farm and planted and harvested the crops. During this time, plaintiff requested that defendant prepare a contract for deed. Plaintiff alleges that he made such a request on three different occasions—November 1973, February 1976, and April 1976, and defendant admits to numerous requests but counters this argument by saying he never intended to sell the land to the plaintiff. Plaintiff asserts that he tried to borrow money ($41,000) in order to pay for the farm and was referred by defendant to a loan officer of a local bank but was unsuccessful in procuring the loan. Thereafter, the plaintiff succeeded in obtaining a loan at another bank, but the defendant refused to turn over the abstract to the bank stating he did not intend to go through with the deal. The plaintiff then mailed a "tender and demand" notice to the defendant in the amount of $41,000, although no check accompanied the notice.

Shortly thereafter, defendant served plaintiff with a notice to quit. Plaintiff filed his complaint on April 23, 1976, claiming that a fiduciary or confidential relationship had been formed prior to the sale and that

because of defendant's failure to sell the land to plaintiff, there was a breach of that fiduciary relationship which should be remedied by a constructive trust.

At trial, plaintiff produced testimony and evidence meant to be indicative of his ownership of the land. The defendant countered by producing evidence and testimony which would indicate a landlord-tenant relationship existed rather than vendor-vendee relationship.

The plaintiff testified as to improvements and operations on the farm which would indicate he was more than a mere tenant.

The following testimony appears in the record:

1. Plaintiff paid for and selected all seed, fertilizers, and herbicides.

2. Defendant made no request for definite payments.

3. Defendant made no suggestions on how the farm was to be operated.

4. Defendant offered no evidence that he ever paid for any improvements on the farm in four years of its operation. Plaintiff paid for all improvements.

5. Plaintiff paid to defendant and defendant cashed checks marked and intended for taxes and insurance for all four years of plaintiff's possession thereof.

6. Plaintiff made a payment to defendant in 1973 with a personal check for $4,000 marked principal and interest which check was cashed without question by defendant.

7. Defendant instructed the local ASC office to change its records to show plaintiff as owner-operator of the farm in question and plaintiff received letters from the ASC office confirming this.

8. Defendant called plaintiff and his wife to his home to decide whether or not to sell 79 acres of the farm to a prospective purchaser in 1974. The plaintiff's decision not to sell was adopted.

9. Plaintiff sold timber from the farm with defendant's knowledge and consent and was allowed to keep the $2,600 therefrom.

10. Plaintiff and defendant discussed clearing the section of the farm where the timber was removed and an offer was made to clear the land by a local machine operator. Although the defendant was willing to accept this offer, the plaintiff was not willing and made a counteroffer but no work was ever done. The plaintiff contends that this implies that he had authority to accept or reject the estimate. (This paragraph was rephrased for purposes of clarification.)

11. Plaintiff depreciated the farm buildings on his yearly income tax return for the four years he lived on the farm. Defendant agreed that plaintiff should take the depreciation rather than himself.

The defendant's testimony and cross-examination of the plaintiff produced the following facts:

1. The plaintiff and defendant were approximately the same age.

2. Plaintiff had more farming experience than the defendant.

3. Neither party had any educational or business experience that would produce an advantage in dealings between them.

4. The men had no prior business dealings between themselves.

5. The men were related only through marriage.

6. There was no written contract between the plaintiff and defendant.

7. The plaintiff reported no income from the soybean crop in 1972 but instead had the money sent by the grain dealer directly to the defendant. Defendant contends that this and an earlier $4,000 payment by plaintiff should be construed as rent payment.

On February 9, 1977, Judge Koch made his determination and found for the defendant and against the plaintiff on plaintiff's complaint and for the counterplaintiff and against the counterdefendant on the issue of possession. The trial judge emphasized the lack of disparity between the plaintiff and defendant as to age, health, mental condition, education and business experience between the parties, and the fact that the plaintiff had not entrusted the handling of his business and financial affairs to the defendant on prior occasions. However, in light of subsequent actions by the plaintiff after purchase of the Jones farm, the court declared, "[I]t can be forcefully argued that plaintiff did repose trust and confidence in defendant after defendant purchased the farm." Even though Judge Koch recognized that a fiduciary relationship may have existed after the purchase of the land, he did not feel that such a relationship existed before the purchase of the farm by the defendant and absent this antecedent relationship there could be no constructive trust.

Plaintiff then filed a motion under Supreme Court Rule 304(a) (Ill. Rev. Stat. 1975, ch. 110A, par. 304(a)) that there was no just reason to delay appeal and that an immediate appeal should be granted notwithstanding the accounting that remained to be heard. This motion was granted on March 7, 1977, and notice of appeal was filed March 8, 1977.

The first issue to be determined is whether or not a confidential relationship existed between the parties prior to the defendant's purchase of the land in question.

■■ Constructive trusts are divided into two general classes: One in which actual fraud is considered as equitable grounds for raising the trust, and the other, where there exists a fiduciary relationship and a subsequent abuse of such a relationship. (*Cunningham v. Cunningham* (1960), 20 Ill. 2d 500, 170 N.E.2d 547; *Bremer v. Bremer* (1952), 411 Ill. 454, 104 N.E.2d 299.) There is no allegation of fraud in the instant case, so only the question of whether a fiduciary relationship was established is at issue. Plaintiff maintains that such a fiduciary relationship existed prior to the agreement to purchase. This fiduciary duty which would give rise to a

constructive trust is not a violation of the Statute of Frauds and may be proved by parol evidence. Ill. Rev. Stat. 1975, ch. 59, par. 9.

■■ Whether or not a fiduciary relationship did exist between the defendant and plaintiff depends on the facts of each case. Of primary importance is the state of mind of the subservient party and it is required that he show by clear and convincing evidence that he reposed trust and confidence in the other party. (*Hofert v. Latorri* (1961), 22 Ill. 2d 126, 174 N.E.2d 866.) The relationship may be shown by reason of friendship, agency, business association, experience, and this must result in one party gaining influence and superiority over the other. (*Steinmetz v. Kern* (1941), 375 Ill. 616, 32 N.E.2d 151; *McCartney v. McCartney* (1956), 8 Ill. 2d 494, 134 N.E.2d 789.) It has frequently been mentioned that relevant factors to be considered include the degree of kinship, as well as disparity in age and business experience, and the extent to which the allegedly servient party entrusts the handling of his affairs to the other. (*McCartney; Kester v. Crilly* (1950), 405 Ill. 425, 91 N.E.2d 419.) Once such a relationship has been established and has been breached, ·then a constructive trust arises by operation of law and not by any agreement or understanding of the parties. *County of Cook v. Barrett* (1975), 36 Ill. App. 3d 623, 344 N.E.2d 540.

Since the facts of a constructive trust case are of such consequence, the opinion of the trier of fact is to be given especially great weight. (*Bremer.*) It is important to note that the trial judge found that "it can be forcefully argued that plaintiff did repose trust and confidence in defendant *after* defendant purchased the farm." (Emphasis added.) This finding is amply supported by facts of the case which demonstrate great reliance by the plaintiff on the defendant after the purchase of the farm. (See facts.) However, the trial court found no fiduciary or confidential relationship prior to the agreement. If this is true, then no constructive trust could arise since the advantage relied on by the party in the dominant position must have been an advantage taken in the very procurement of the property which forms the corpus of the trust. *Ryder v. Ryder* (1910), 244 Ill. 297, 91 N.E. 451; *Delfosse v. Delfosse* (1919), 287 Ill. 251, 122 N.E. 484.

In determining that no such fiduciary relationship did materialize until after the agreement, the trial court relied primarily on the following facts: (1) There was no age disparity between defendant and plaintiff; (2) plaintiff had more farming experience than defendant; (3) they were not closely related; (4) there was no evidence that prior to the purchase of the farm by defendant that plaintiff had ever entrusted business affairs to defendant or had ever sought his advice; (5) it was the defendant and not the plaintiff who initiated the discussion as to the purchase of the Jones farm; (6) there was no agreement as to how plaintiff could or would pay

for the farm if defendant bought it for him. In relying on these facts the court cited the case of *Ray v. Winter* (1976), 39 Ill. App. 3d 567, 350 N.E.2d 331, as primary authority. There, the appellate court for the Fifth District relied heavily on such things as disparity of age, intelligence, education, business experience, mental condition and the extent to which the servient party entrusts to the dominant party the handling of affairs. Since the trial court's decisiòn, however, the *Ray* case was reversed by the Illinois Supreme Court and close scrutiny of that case, its facts and its holding is very important to a determination of the instant case.

In *Ray* (1977), 67 Ill. 2d 296, 367 N.E.2d 678, the plaintiff was interested in buying some land. Lacking adequate finances, he made an oral agreement with the owner of the 60 acres that the land would be reserved for him until the plaintiff could sell some cattle in the fall in order to pay for the land. Then plaintiff heard that defendant, who he did not know, but whose wife was a friend of his wife, was interested in acquiring some farmland. The plaintiff contacted the defendant and they agreed that defendant would buy 20 acres. Subsequently, on August 15, the plaintiff became concerned that another party might purchase the 60-acre tract and thus plaintiff telephoned the defendant who agreed to purchase the entire 60-acre parcel. Plaintiff testified that it was agreed that defendant was to convey 40 acres to him as soon as plaintiff sold his cattle. Later, after Christmas, the plaintiff requested sale of the land but defendant refused. Defendant testified he had never made any such agreement, however, it was evident that defendant did not decide to keep the entire 60-acre parcel until the August 15 agreement. The advisory jury found both fraud and fiduciary relationship, but the appellate court reversed on both of these findings and would not impose a constructive trust.

The Supreme Court of Illinois reversed the appellate court. Although they did not feel the evidence supported the jury's finding of actual fraud, the court did find clear and convincing evidence to support the existence of the fiduciary relationship and its subsequent breach. The court did not use the same analysis as was employed by the appellate court, but instead decided the matter on agency principles. The court said:

> "In most cases, a mere oral agreement does not give rise to a confidential or fiduciary relationship. Where, however, one voluntarily acts as an agent for another, a fiduciary relationship exists as a matter of law. [Citations.] By [defendant's] undertaking to purchase the property for the plaintiff, who had a prior existing interest in it, the relationship of principal and agent was created. [Citations.] If the one who undertakes to purchase land for another later refuses to convey, equity will raise a constructive trust and compel him to turn it over to the one equitably entitled to it. [Citations.]" *Ray*, 67 Ill. 2d 296, 304-05, 367 N.E.2d 678, 682-83.

The *Ray* case was decided on agency principles and thus it seems necessary to determine in the instant case whether defendant was acting as an agent for the plaintiff in purchasing the farmland. The *Ray* case and the instant case are similar except in two important respects. In *Ray*, the plaintiff did not take possession of the property where in the instant case, the plaintiff did take possession and made extensive improvements to the land and the farmhouse. The second distinction is the most important one; the plaintiff in the *Ray* case solicited the defendant concerning the farmland, where, in the present case, the defendant solicited the plaintiff. The Supreme Court of Illinois stressed this point, saying "By [defendant's] undertaking to purchase the property for the plaintiff, who had a prior existing interest in it, the relationship of principal and agent was created." Later in the opinion, the court states:

> "Significantly, plaintiff had an interest in this property prior to the parties' arrangement. He located the property, contacted its owner, negotiated the purchase terms, and secured the owner's promise to hold it for him until that fall." (67 Ill. 2d 296, 305, 367 N.E.2d 678, 683.)

A further quote reads as follows:

> "We believe the result reached in this case is consistent with other cases wherein a party offers to assist another with the purchase of property in which that person had a preexisting interest." 67 Ill. 2d 296, 306, 367 N.E.2d 678, 683.

These excerpts from the supreme court opinion indicate that the fact the plaintiff in that case had already made the arrangements as to the purchase before the defendant even came into the scene was very important in determining the agency relationship as a matter of law. However, it can be argued that the fact that the plaintiff in the instant case did not have any disposition toward buying the property before defendant contacted him should not be dispositive of the question as to whether a fiduciary relationship of agent-principal was established. The Restatement of Restitution, §194(2), comment d (1937) does not stress this fact. Nor is the fact stressed in V Scott, Trusts §499, at 3543 (1967), where it is stated: "By undertaking to purchase the property for the complainant, the relation of principal and agent is created. Such a relation arises where one person undertakes to act for and in behalf of another, even though the undertaking is gratuitous and oral."

Furthermore, the Illinois Supreme Court cases of *Black v. Gray* (1952), 411 Ill. 503, 104 N.E.2d 212, and *Kuzlik v. Kwasny* (1943), 383 Ill. 354, 49 N.E.2d 212, which also dealt with a constructive trust established by a breach of agency-principal relationship in regard to a purchase of land, do not mention that the principal must solicit the agent or that the agent must have a preexisting interest in the property. Therefore, it seems that

the fact the plaintiff in this case had not taken steps toward purchasing the property before defendant approached him is only one fact to be considered in determining whether an agency-principal relationship exists. Other facts that may be considered are the steps the plaintiff took following the purchase of the property by the defendant.

■■■ In order to be enforceable as a constructive trust, the agency relationship must have existed at the time of the purchase of the Jones farm. Evidence of the plaintiff's and defendant's later actions is relevant to show that the agency relationship existed prior to the purchase of the land. There was no testimony of further statements after the purchase of the land to set up the relationship. However, the actions of both parties showed that both thought that a relationship other than landlord and tenant had been established and both acted as if the plaintiff was the owner of the land. Taken all together, the actions of the parties show that the defendant had offered to purchase the property for the plaintiff and was, in fact, acting as plaintiff's agent in procuring the land.

■■ Since there was an agency relationship at the time of the purchase of the Jones Farm, then the failure of the defendant to reconvey was a breach of the fiduciary relationship and a constructive trust should be established. This follows since once the existence of a fiduciary duty is established, there is a presumption of unfairness if the dominant party has profited. Then the dominant party can rebut it by clear and convincing proof. Here, there has been no evidence showing fairness, and thus a constructive trust is appropriate "[i]f the one who undertakes to purchase land for another later refuses to convey, equity will raise a constructive trust and compel him to turn it over to the one equitably entitled to it." *Ray,* 67 Ill. 2d 296, 305, 367 N.E.2d 678, 683.

The trial court's decision would be correct if the Supreme Court of Illinois had not reversed the *Ray* case. The supreme court emphasized agency concepts and thus if it is found that defendant in the instant case was acting as plaintiff's agent in purchasing the Jones Farm, then a constructive trust should arise. The trial court's holding that there was no confidential relationship in existence prior to the purchase of the land and no constructive trust is against the manifest weight of the evidence.

The cause is reversed and remanded to the trial court with instructions that the defendant herein shall convey the property to the plaintiff and that an accounting shall be had to determine the amount due and owing to the defendant.

Reversed and remanded with directions.

CRAVEN, P. J., and REARDON, J., concur.