**PRO FOOTBALL WEEKLY, INCORPORATED, an Illinois corporation, Plaintiff–Appellant,**

v.

**GANNETT COMPANY, INCORPORATED, Defendant–Appellee.**

No. 92–1180.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 1992.

Decided March 11, 1993.

James S. Gordon (argued), Edward Slovick, Chicago, IL, for plaintiff-appellant.

David B. Love, Thomas A. Reynolds, III (argued), Winston & Strawn, Chicago, IL, for defendant-appellee.

Before CUMMINGS and COFFEY, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

The issue is whether the district court erred in granting Gannett Company's motion for a directed verdict on Pro Football Weekly's claim for breach of fiduciary duty. As we shall explain below, we believe there was no error.

## I. BACKGROUND

A two million dollar jury verdict motivates the litigants in this case, Pro Football Weekly, Inc. (PFW) and Gannett Company, Inc. (Gannett). As its name would imply, PFW published a newspaper entitled Pro Football Weekly which was devoted to the coverage of professional football. Gannett is also a media concern, but on a vastly larger scale. In addition to publishing the USA Today newspaper, Gannett owns dozens of regional papers, television stations, radio stations, and a billboard company.

It looked for a time as if Gannett would add PFW to its expanding collection. In 1983 the two companies began discussions concerning a possible business relationship. These talks culminated in the signing of an Option and Stock Purchase Agreement (Agreement) and a promissory note. Pursuant to the Agreement, Gannett acquired a one-year option to purchase PFW's stock at an agreed-upon price. Additionally, Gannett lent PFW $300,000 and agreed to boost PFW's circulation by advertising the football journal in Gannett media.

In 1984 Gannett lent PFW another $150,000 plus services of a consultant for PFW's summer subscription drive. This drive was one of many that PFW conducted each year by direct mail. Despite Gannett's infusion of capital and talent, the number of new subscriptions generated by the summer mailing fell far short of PFW's expectations.

PFW's financial problems continued to worsen during 1984 and early 1985, and the company was able to repay Gannett only a small portion of the $450,000 it had borrowed. In April 1985 Gannett decided not to exercise its option to purchase PFW's stock. Three months later PFW ceased publication of its newspaper and filed for bankruptcy.

## II. PROCEDURE

In June 1985 one of PFW's shareholders filed suit against Gannett in Illinois state court. The shareholder sought damages for the diminution in PFW's stock which was allegedly caused by Gannett. Through various procedural twists and turns, the shareholder was dropped from the suit and Gannett and PFW found themselves as adversaries in federal district court; the court based its jurisdiction on diversity of citizenship, 28 U.S.C. § 1332.

Before the district court, PFW based its right to recovery upon three separate causes of action. First, PFW alleged that the Agreement between Gannett and PFW

vested actual control of PFW in Gannett. Because of this control, Gannett allegedly became a fiduciary for PFW and its shareholders. According to PFW, Gannett breached its fiduciary duty by controlling the summer subscription campaign to PFW's detriment. Second, PFW alleged Gannett committed fraud by misrepresenting the success of the direct mail subscription campaign and advertisements Gannett planned to run in its media for PFW. Third, PFW asserted that Gannett unjustly enriched itself at PFW's expense by inadequately compensating PFW for its services in producing a series of newspaper features for Gannett.

Gannett denied liability and counterclaimed for the remaining amounts PFW owed on the loans from Gannett. This amount came to approximately $350,000, including interest and late penalties. In addition, Gannett sought litigation costs and attorney fees.

The trial took place in September 1988 and lasted almost two weeks. At the close of PFW's case in chief, Gannett moved for a directed verdict in its favor pursuant to Federal Rule of Civil Procedure 50. The court took this motion under advisement until the conclusion of the case. Gannett also moved for a directed verdict in its favor on its counterclaim. Without opposition from PFW, the court granted that motion, assessing $322,744 in damages. The remainder of the case, PFW's three claims, was submitted to the jury. Pursuant to the parties' agreement, the jury was given both a general verdict form and a special interrogatory form that directed the jury to answer certain questions concerning PFW's various causes of action.

The jury returned its verdict the next day. On the general verdict form the jury found in favor of PFW and assessed $2,048,261 in damages. On the special interrogatory forms the jury found in PFW's favor on the breach of fiduciary duty and unjust enrichment claims; the jury assessed damages in the amounts of $106,739 and $35,000 respectively. The jury found in Gannett's favor concerning PFW's fraud claim.

Both parties then filed various post-trial motions, the one relevant to this litigation being Gannett's motion for a directed verdict in its favor. On November 18, 1991, the court issued a Memorandum Opinion and Order which granted Gannett's motion for a directed verdict on PFW's breach of fiduciary duty and unjust enrichment claims. The court also entered judgment in favor of Gannett in accordance with the jury's special interrogatory on PFW's fraud claim.

This appeal followed. As the appeal was timely, we have jurisdiction pursuant to 28 U.S.C. § 1291.

## III. DISCUSSION

On appeal, PFW asks this court to reverse the district court's directed verdict and to remand the cause for a new trial on Plaintiff's breach of fiduciary duty claim. PFW has chosen not to pursue its appeal on the unjust enrichment claim, reasoning that any damages sustained on that theory "would be subsumed within the recoverable damages on plaintiff's breach of fiduciary duty claim." Pl.'s Br. at 27 n. 4.

PFW presents two arguments in an attempt to persuade us to reverse and remand the district court. First, PFW asserts that the district court had no power to direct a verdict for Gannett. Second, PFW contends the district court erred in granting Gannett's motion for a directed verdict.

### A. PRESERVING THE RIGHT TO A DIRECTED VERDICT

Federal Rule of Civil Procedure 50 governs the process by which a directed verdict and a judgment notwithstanding the verdict (j.n.o.v.) may be obtained. This rule was amended on December 1, 1991; proceedings below were concluded prior to the rule's amendment and therefore we are guided by the prior version of Rule 50.

Under Rule 50 a party may make a motion for a directed verdict at the close of the evidence offered by an opponent. A party may also make a motion for a directed verdict at the close of all the evidence.

If the motion at the close of all evidence is "denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion." Fed.R.Civ.P. 50(b).

■ If the movant is unhappy with the judgment entered on the jury verdict, that party may then move for a j.n.o.v. This must be done "[n]ot later than 10 days after entry of judgment." *Id.* Due to Seventh Amendment concerns, a motion for a j.n.o.v. ordinarily cannot be made unless it was preceded by a motion for a directed verdict made at the close of all the evidence. *Benson v. Allphin,* 786 F.2d 268, 273 (7th Cir.), *cert. denied,* 479 U.S. 848, 107 S.Ct. 172, 93 L.Ed.2d 109 (1986).

■ PFW does not dispute that Gannett made a written motion for a directed verdict at the close of PFW's case in chief. The court responded to that motion by requesting Gannett's "consent to the Court taking the matter under advisement until the conclusion of the case to permit the defendant's case to be put on in its entirety so that whatever ultimately occurs in this case, the Appellate Court would have a complete record." Tr. at 699. Gannett consented and the district court took the matter under advisement. *Id.* at 700.

PFW does argue, however, that Gannett failed to renew its motion for a directed verdict at the close of all evidence and therefore the district court had no authority to grant the directed verdict. The district court, however, found that Gannett had renewed its motion. *Pro Football Weekly, Inc. v. Gannett Co., Inc.,* No. 85 C 6612, 1991 WL 256693, at *2 (N.D.Ill. Nov. 20, 1991).

Before submitting the case to the jury, Judge Nordberg held jury instruction conferences with the litigants' attorneys. During one such conference, following the close of all evidence, counsel for Gannett repeatedly asserted his client's objection to instructing the jury as to PFW's breach of fiduciary duty claim. At one point Gannett's counsel said, "As your Honor knows, we have throughout this case insisted that we never became a fiduciary and never

owed the plaintiff a fiduciary duty. We think the evidence is overwhelming on that point." Tr. at 1267. In response, Judge Nordberg replied, "All right. This is part of, I know, your motion for directed verdict at the close of all the evidence.... I'll take it that you've made that motion and I'll take it under advisement." *Id.* at 1269–70.

Although Gannett had not explicitly made another motion for a directed verdict at the close of all the evidence, we agree with the district court that the above discussion constitutes a sufficient renewal of Gannett's earlier motion. As the district court aptly noted, "[C]ounsel for Gannett would have looked silly making an additional motion for directed verdict after the Court stated that it considered the motion already made." *Pro Football Weekly,* 1991 WL 256693, at *2. We therefore hold that the district court did have the power to direct a verdict for Defendant. Thus we need not address the question of whether a renewal of Gannett's earlier directed verdict motion was even necessary. *Cf. Farley Transp. Co. v. Santa Fe Trail Transp. Co.,* 786 F.2d 1342, 1346 (9th Cir.1985) (reservation of ruling on motion for directed verdict "constitutes judicial indication that renewal of the motion is not necessary to preserve the moving party's rights").

We next address the question of whether it was proper for the court to direct the verdict.

B. DIRECTING THE VERDICT

The district court correctly noted that in diversity cases the court must apply the forum state's standard for directed verdict. *Kessinger v. Grefco Inc.,* 875 F.2d 153 (7th Cir.1989); *see also Krivo Indus. Supply Co. v. National Distillers & Chem. Corp.,* 483 F.2d 1098, 1101 (5th Cir.1973) (federal law provides procedure in diversity suit but state law provides substantive law for scrutinizing evidence).

According to the Illinois Supreme Court, "A directed verdict or a judgment *n.o.v.* is properly entered in those limited cases where 'all of the evidence, when viewed in

its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.'" *Maple v. Gustafson,* 151 Ill.2d 445, 177 Ill.Dec. 438, 442, 603 N.E.2d 508, 512 (1992) (footnote omitted) (quoting *Pedrick v. Peoria & E. R.R. Co.,* 37 Ill.2d 494, 229 N.E.2d 504, 513–14 (1967)). "This standard does not require a complete lack of evidence to support the nonmovant's claim. Rather, a directed verdict is still proper when there is only a mere scintilla of evidence to support the nonmovant's allegations...." *Pennsylvania Truck Lines, Inc. v. Solar Equity Corp.,* 882 F.2d 221, 225 (7th Cir.1989) (summarizing Illinois law).

Neither party contends the trial court was unaware of the proper standard for granting a directed verdict; the dispute instead centers on the trial court's application of this standard.

It is obvious that the jury inconsistently assessed damages. As noted earlier, the jury awarded PFW a total of $2,048,000 on the general verdict form. Yet on the special interrogatories, the jury found Gannett had damaged PFW in the total amount of $142,000.

The jury's inconsistency prompted a number of post-trial motions. After considering the parties' briefs on those motions and having reviewed the 1,580 pages of trial record, Judge Nordberg stated that he was convinced Gannett was entitled to a directed verdict on PFW's fiduciary duty and unjust enrichment claims. Again, on appeal PFW only objects to the directed verdict on the fiduciary duty claim.

■ To understand whether the directed verdict was proper, it is first necessary to understand the law governing PFW's breach of fiduciary duty claim. In its brief, PFW cites only one case in support of its argument that Gannett owed PFW a fiduciary duty; that case is *Whewell v. Cox,* 54 Ill.App.3d 179, Ill.Dec. 876, 369 N.E.2d 330 (1977). PFW relies on *Whewell* for the proposition that "the primary consideration in determining whether a fiduciary relationship exists ... is the state of mind of the subservient party." It is true

the case does use similar language, *see id.* at 880, 369 N.E.2d at 334, but the context in which the Illinois Appellate Court made this comment has nothing to do with the present situation.

In *Whewell,* the plaintiff sought a constructive trust over a farm which the defendant purchased. The court found the defendant, who was plaintiff's brother-in-law, had purchased the farm as plaintiff's agent. As an agent, the defendant stood in a fiduciary relation to the plaintiff. There is no agency, however, in the current case, nor is there a conveyance of real estate, nor is there a family relationship. Instead, we have an arms-length business relationship between two corporations based upon a written contract. *Whewell* simply does not support PFW's allegation of a fiduciary duty.

The district court also found it difficult to find case law that would support PFW's claim. Speaking to counsel at a jury instruction conference, Judge Nordberg remarked, "[T]he thing is that we have not been able to find any support in your cases for your theory of the case." Tr. at 1263–64. In that same conference, counsel for Gannett stated that "there is no cognizable theory ... that can be given in this case." *Id.* at 1269.

Nonetheless, the court ended up giving the jury the following instruction regarding fiduciary duty:

> For the defendant to have been a fiduciary for the plaintiff, the plaintiff must prove by a preponderance of the evidence that the defendant completely controlled the plaintiff's 1984 summer subscription mailing campaign. Merely providing advice or counseling, or mere influence or pressure by the defendant on the plaintiff is insufficient. The defendant must have both possessed and exercised actual control over the plaintiff's business for a fiduciary relationship to have existed.

*Pro Football Weekly, Inc. v. Gannett Co., Inc.,* No. 85 C 6612, 1991 WL 256693, at *3 (N.D.Ill. Nov. 20, 1991).

The authorities cited in support of this jury instruction, however, have little if any-

thing to do with the facts of this case: *Southern Pacific Co. v. Bogert*, 250 U.S. 483, 39 S.Ct. 533, 63 L.Ed. 1099 (1919), dealt with the duty a majority shareholder owes a minority shareholder; *Spartech Corp. v. Opper*, 890 F.2d 949 (7th Cir.1989), involved the liabilities between the sole shareholder of a corporation and its former owners; *In re W.T. Grant Co.*, 699 F.2d 599 (2d Cir.), *cert. denied*, 464 U.S. 822, 104 S.Ct. 89, 78 L.Ed.2d 97 (1983), featured a settlement between debentureholders and a bankrupt estate; *Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir.1982), *cert. denied*, 464 U.S. 818, 104 S.Ct. 77, 78 L.Ed.2d 89 (1983), concerned the liability of a bank to the stockholders of a bankrupt company which the bank had effectively controlled; *Krivo Industrial Supply Co. v. National Distillers & Chemical Corp.*, 483 F.2d 1098 (5th Cir.1973), discussed the liability of one corporation for the debts of another when the debtor corporation was a mere instrumentality of the solvent corporation; and *In re Honold*, 46 B.R. 125 (Bankr.E.D.Pa.1985), examined the subordination of a creditor's claim in bankruptcy proceedings where the creditor allegedly was the debtor's alter ego.

Despite the shortage of relevant law cited to this court, let us assume for the sake of this discussion that a fiduciary duty could arise between PFW and Gannett if Gannett took complete control over PFW's business. Even so, it is undisputed that Gannett did not control the entirety of PFW's business.

Although PFW initially alleged, in its amended complaint, that Gannett had "actual control of PFW," it quickly retreated from this position. By the time the jury instruction conference rolled around, PFW's counsel stated that "I don't think we allege anywhere in the complaint that they took over the entire business." Tr. at 1271. In oral arguments before this court, PFW's counsel stuck with the latter position and admitted there was "no evidence of [Gannett's] complete control of the entire business." Based on our review of the record, we agree with PFW—there is no evidence Gannett controlled PFW.

Does it matter, though, if Gannett completely controlled only a part of PFW's business? The district court believed it did: "Although the Court agrees that PFW has cited no case on point in support of its claim, the Court believes that complete control of a separate part of a business could impose a fiduciary duty in connection with that separate part." *Pro Football Weekly*, 1991 WL 256693, at *11 n. 1. Perhaps the district court is correct. However, even under this unsubstantiated legal standard, it is beyond dispute that the summer mailing was not "a separate part" of PFW's business. The mailing was merely one, albeit perhaps the most important, of a number of direct mail solicitations PFW regularly conducted. Reaching the same conclusion, the district court stated in its Memorandum Opinion and Order that it "erred in ... instructing the jury on this claim." *Id.*

While the court may have erred in instructing the jury on this claim, it did not err in directing the verdict for Gannett. Aside from the suspect legal theory underpinning PFW's claim, the evidence, when viewed most favorably to PFW, overwhelmingly favors Gannett's contention that it did not have complete control over the summer mailing. As Judge Nordberg pointed out, and the testimony plainly shows, PFW had substantial power over the timing, printing, content, and destination of the direct mailing. Gannett clearly is entitled to a directed verdict on the breach of fiduciary duty claim.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's directed verdict.

AFFIRMED.