JUTTA STONE, Plaintiff-Appellant, v. DANIEL F. McCARTHY, Defendant-Appellee.

First District (5th Division)   No. 86—2637

Opinion filed July 17, 1987.

570

Martha A. Mills and Celeste E. Kralovec, both of Foss, Schuman, Drake & Barnard, of Chicago, for appellant.

Pedersen & Houpt, P.C., of Chicago (Arthur M. Holtzman, of counsel), for appellee.

PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

This appeal is from the dismissal of a complaint for a declaratory and injunctive relief, an accounting, the imposition of a constructive

trust and damages.

Plaintiff, Jutta Stone, filed a three-count amended verified complaint alleging, essentially, that defendant, Daniel McCarthy, committed a breach of a fiduciary duty arising out of an oral agreement reached by them concerning the purchase of a certain parcel of land. Specifically, Stone alleged that in March 1986 she discussed with McCarthy—a builder who had constructed a home for her in 1978—the estimated cost of a new home she planned to have built and thereafter began looking for a suitable lot located within a particular school district in Evanston, Illinois. Upon finding a lot she liked, she had architectural plans drawn and submitted them to McCarthy to use in calculating the ultimate cost, which he estimated would be $105,000 excluding the land, but the owners subsequently refused to sell the lot to her. On May 19, 1986, McCarthy telephoned her suggesting she look at a lot advertised for sale on the corner of Princeton Avenue and Old Orchard Road (the corner lot), but when she saw it, she did not like its location. As she continued driving, however, she noticed an unimproved, landscaped lot further down Princeton Avenue (the Princeton lot). Seeing no "for sale" sign, she went to the house next door, where she spoke to Mae Doetsch and her daughter, Phyllis Coulam, who informed her that both the corner and Princeton lots were held in the same trust of which Doetsch was beneficiary and Coulam and her sister, Patricia Elias, were trustees. Doetsch and Coulam informed her that they had received no prior inquiries regarding the Princeton lot and agreed to sell it to her. She offered to write a check as earnest money, but they told her it was unnecessary to do so at that time. She then contacted McCarthy and told him what had occurred. In the course of their conversation he suggested that he contract to purchase both lots, buying the corner lot for himself and acting as her agent and builder in acquiring the Princeton lot for her and constructing her home on it. She advised him that the lots had been appraised at approximately $42,000 and $52,000, respectively, and they agreed to equally divide any savings they might realize by purchasing both pieces of property in one transaction. However, she further instructed him not to bargain too much with the sellers as she was willing to pay the full price for the Princeton lot. Later that day, she took McCarthy to see the Princeton lot and to meet Coulam. While there, they informed Coulam of their decision that McCarthy would purchase both parcels and thereafter build a home for her on the Princeton lot. On May 22, she discussed with her architect some possible modifications in the house plans since the Princeton lot was larger than the one for which they had originally

been drawn. He advised her to retrieve the plans from McCarthy so that the appropriate changes could be made. The first time she spoke with McCarthy that same day, concerning an unrelated matter, he said nothing to indicate that he did not intend to go through with their agreement, but later that afternoon, he informed her that he would not allow her to have the Princeton lot. When they met, he explained that his wife had wanted him to build a house for them for a long time and, because he liked the Princeton lot more than the corner lot, he was keeping it for himself. As of that afternoon, Doetsch and Coulam still believed that McCarthy had contracted to buy the Princeton lot for her.

In response thereto, McCarthy filed a motion to dismiss the complaint under section 2—619(a)(9) of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(9)), on the ground that Stone's claim was barred by affirmative matter, the lack of a written agreement and by the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 1 *et seq.*). The motion was supported by McCarthy's affidavit wherein he denied having agreed to build a house for Stone or having undertaken to act as or to represent himself to be her agent in the purchase of the property at issue.

At a hearing on August 18, 1986, the trial court granted McCarthy's motion to dismiss the complaint, finding that Stone had failed to allege facts sufficient to establish an agency relationship which would give rise to fiduciary obligations on the part of McCarthy, and that even assuming a fiduciary relationship did exist, agreements for the purchase of land must be in writing.

OPINION

Relying primarily on *Ray v. Winter* (1977), 67 Ill. 2d 296, 367 N.E.2d 678, *Black v. Gray* (1949), 403 Ill. 503, 87 N.E.2d 635 (appeal from the dismissal of the action), and *Black v. Gray* (1952), 411 Ill. 503, 104 N.E.2d 212 (appeal from the judgment for defendant following remandment of the action), Stone contends that her complaint adequately states a cause of action for breach of a fiduciary relationship for purposes of imposing a constructive trust upon the Princeton lot.

In *Ray v. Winter,* the plaintiff, Ray, became interested in a 60-acre tract of farmland to expand his farming operations. He contacted the owner and agreed, in July 1972, to purchase the entire tract for $8,000, but because he lacked adequate finances at that time he and the owner further agreed that the sale would take place in the fall after he sold some cattle. Shortly thereafter, Ray learned

that defendant Winter, who was married to a friend of his wife's, was also interested in acquiring some farmland in that area. Ray informed Winter of the availability of the farmland and took him to view the property, which was divided by a road into two parcels of 40 and 20 acres, respectively. Ray agreed to sell the 20-acre parcel to Winter for the same price per acre that he had agreed to pay the owner, explaining, however, that no purchase could be made until the fall. They then drove to the owner's house and informed him of the arrangements they had made. In mid-August Ray learned, and advised Winter by letter, that another party was interested in the property, whereupon Winter telephoned Ray and expressed concern over the possibility of losing the land. During their conversation, it was agreed that Winter would purchase the entire 60-acre tract immediately. Ray testified that Winter agreed to purchase the 40 acres for his (Ray's) benefit and to convey the property to him following the sale of his cattle and that on the basis thereof, he contacted the owner, informed him of the arrangement and gave him permission to sell the land to Winter; but that when he subsequently requested conveyance of the land, Winter refused, having decided to keep all 60 acres for himself. Winter denied the existence of the agreement to which Ray testified. Following a trial before an advisory jury, the trial court entered judgment imposing a constructive trust in Ray's favor and ordered Winter to convey the 40 acres upon Ray's payment of the purchase price. The appellate court reversed, finding the evidence insufficient to demonstrate either actual fraud or breach of a fiduciary duty. The supreme court reversed the appellate court and reinstated the judgment for Ray, holding that while the evidence did not support a finding of actual fraud, it did establish the existence of a fiduciary relationship and a subsequent breach thereof by Winter giving rise to a constructive trust.

In so holding, the court noted that constructive trusts arise in two general situations: where there is actual fraud or where there has been a breach of a fiduciary relationship (*Ray v. Winter* (1977), 67 Ill. 2d 296, 303, 367 N.E.2d 678, 682), the latter of which requires a showing that one person has reposed trust and confidence in another who by reason thereof gains a resulting influence or superiority over the other. "Generally, this is accomplished by establishing facts showing an antecedent relationship which gives rise to trust and confidence reposed in another." (67 Ill. 2d 296, 304, 367 N.E.2d 678, 682.) The *Winter* court further stated that although in most cases an oral agreement does not give rise to a confidential or fiduciary relationship, where one voluntarily acts as an agent for another

a fiduciary relationship exists as a matter of law and that if the one who has undertaken to purchase land for another subsequently refuses to convey it, "equity will raise a constructive trust and compel him to turn it over to the one equitably entitled to it." (67 Ill. 2d 296, 305, 367 N.E.2d 678, 683.) Noting that Ray had located the property, contacted its owner, negotiated the purchase terms and secured the owner's promise to hold it for him until fall, the *Winter* court determined that Ray had a prior existing interest in the property and that when Winter undertook to purchase it for him, the relationship of principal and agent was created.

Numerous other cases, both before and since *Ray v. Winter*, have enunciated and relied upon these same principles as the basis for the decisions reached therein regarding constructive trusts arising out of an agency relationship. For instance, in *Black v. Gray* (1952), 411 Ill. 503, 104 N.E.2d 212, evidence was presented that the defendant orally agreed to purchase on the plaintiff's behalf the interest owned by another in a parcel of real estate adjoining plaintiff's property for a sum not exceeding $1,000. Defendant was to receive a commission of one-half of the difference, if any, between $1,000 and what he paid. Using his own funds, defendant purchased the interest but thereafter refused to convey it to plaintiff. Although the defendant denied both the agreement and the agency relationship, the trial court declared a constructive trust in plaintiff's favor and ordered that the property be conveyed to him. The supreme court affirmed that judgment, finding the existence of an agency relationship giving rise to fiduciary obligations, the breach of which resulted in the creation of a constructive trust.

In *Whewell v. Cox* (1977), 54 Ill. App. 3d 179, 369 N.E.2d 330, this court held that the existence of a fiduciary relationship may be shown by reason of friendship, a business relationship or agency which results in one gaining influence or superiority over the other, and that where agency is alleged, it is not necessary to show a disparity in age, intelligence or experience between the parties. The court further stated that although found to be present and significant in *Ray v. Winter*, the existence or absence of a preexisting interest by the plaintiff in the property at issue is but one of numerous facts to be considered, on a case-by-case basis, in determining whether a principal-agent relationship exists.

Finally, as is clear from the reasoning and holdings of these cases and as was expressly stated in *Whewell v. Cox* (1977), 54 Ill. App. 3d 179, 369 N.E.2d 330, and in *Black v. Gray* (1949), 403 Ill. 503, 87 N.E.2d 635, the imposition of a constructive trust upon real

property is not violative of the Statute of Frauds. The supreme court explained in *Black v. Gray*:

> "It is the essence of an agent's obligation that he act on behalf of his principal. It is the breach of this primary duty which gives rise to a constructive trust, not the mere failure to convey the title he acquired as a result thereof. There seems to us to be a material distinction between the case where an interest in land is a consideration for the contract *** and the case where such interest arises only as a remote or indirect result of the contract, and from an abuse of the relations thereby established. *** [T]he alleged contract itself does not purport to create any interest, legal or equitable, in the land therein referred to. Its sole purpose and effect is the creation of a relation of principal and agent. The land itself formed no part of the consideration. *** The fact that the subject matter of the agency is land does not alter the legal effect of a violation of his fiduciary duty. *** [T]he modern current of authority is that if an agent undertakes to negotiate for land on behalf of his principal and purchases the property with his own funds, thereby acquiring the title, he becomes a constructive trustee for the principal's benefit. The Statute of Frauds interposes no bar to the enforcement of such constructive trusts." 403 Ill. 503, 505-06, 87 N.E.2d 635, 636.

In the instant case, plaintiff alleged that she and McCarthy had an antecedent relationship by reason of his having built her home eight years earlier; that he had also agreed to build the new home she wanted once a suitable lot was found; that she had submitted architectural drawings to him on the basis of which he gave her a cost estimate of the proposed house; that he had offered his assistance in her search for a lot by suggesting that she inspect the corner lot but that she independently found the Princeton lot, located the beneficiary and one of the trustees of the trust in which both lots were held, discussed with them the availability and price of the Princeton lot and her interest in purchasing it, agreed to buy it and offered a check as earnest money, which they stated was unnecessary at that point; that she took McCarthy to see the lot and introduced him to the owners; that McCarthy thereafter suggested that since the corner and Princeton lots were owned by the same persons, they might be able to effectuate an overall savings by purchasing both lots at once; that he volunteered and they agreed that he would purchase the corner lot for himself and the Princeton lot for her and that they would split whatever savings resulted therefrom; that she neverthe-

less instructed him not to bargain excessively with the owners as she very much wanted the property and was willing to pay the asking price; that in reliance on their agreement, she advised the owners that McCarthy would buy both parcels and thereafter build her home on the Princeton lot and also contacted the architect who had drawn the original plans to discuss with him modifications in its size; and that McCarthy thereafter breached the agreement by informing her that he had decided to keep the Princeton lot for himself and his wife.

In contrast to the finding of the trial court, it is our view that in the light of the authorities cited above, plaintiff's complaint contains sufficient factual allegations as to the existence of an agency relationship giving rise to fiduciary obligations on the part of McCarthy to state a cause of action for breach thereof.

■ In any event, as noted earlier, McCarthy moved for dismissal under section 2—619(a)(9) of the Code, which provides:·

"Defendant may, within the time for pleading, file a motion for dismissal of the action or for other appropriate relief upon any of the [grounds enumerated in subsections 1 through 9]. If the grounds do not appear on the face of the pleading attacked the motion shall be supported by affidavit:

\* \* \*

[t]hat the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect of or defeating the claim." Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(9).

As we noted in *Higgins v. Kleronomos* (1984), 121 Ill. App. 3d 316, 459 N.E.2d 1049, "[the] reference to 'affirmative matter' which avoids or defeats the opponent's claim supports the interpretation that this subparagraph was intended to provide only for the raising of affirmative defenses" (121 Ill. App. 3d 316, 319, 459 N.E.2d 1049, 1050), which completely negate an alleged cause of action or refute crucial conclusions of law or conclusions of material fact unsupported ·by specific facts contained in or reasonably inferred from the complaint. (*Russo v. Boland* (1982),· 103 Ill. App. 3d 905, 431 N.E.2d 1294.) In other words, the affirmative matter must be something more than an assertion that the complaint fails to plead sufficient facts to state a cause of action (*Illinois Housing Development Authority v. Sjostrom & Sons, Inc.* (1982), 105 Ill. App. 3d 247, 433 N.E.2d 1350), or evidence offered to controvert a well-pleaded fact in the complaint, for it is fundamental that a motion to dismiss concedes, and the court presented therewith is required to accept, the truth of all well-pleaded facts and reasonable inferences which may

be drawn therefrom (*Russo v. Boland* (1982), 103 Ill. App. 3d 905, 431 N.E.2d 1294; *First National Bank v. Minke* (1981), 99 Ill. App. 3d 10, 425 N.E.2d 11).

Although McCarthy's motion to dismiss specifically asserts that Stone's complaint "is barred by other affirmative matter, including the lack of a writing and the Statute of Frauds," his affidavit consists almost exclusively of denials of plaintiff's allegations that he had agreed to act as her agent in the purchase of any real estate, that he represented to anyone that he was purchasing either of the lots for or on her behalf or that he had agreed to build a house thereon for her. These denials do not constitute "affirmative matter" avoiding the legal effect of or defeating plaintiff's claim, but merely seek to contradict the allegations of the complaint and, thus, are not properly considered on a motion to dismiss under section 2—619(a)(9). The only affirmative matter raised by McCarthy was that the Statute of Frauds bars enforcement of any oral agreement for the purchase or conveyance of real property. Having already determined that the Statute of Frauds is not violated by the enforcement of a constructive trust, we reverse the order of the trial court dismissing the complaint and remand this cause for further proceedings, noting that by our ruling, McCarthy is not precluded from challenging Stone's allegations by way of answer. *First National Bank v. Minke* (1981), 99 Ill. App. 3d 10, 425 N.E.2d 11.

For the reasons stated, the order of the trial court is reversed and the cause is remanded for further proceedings.

Reversed and remanded.

PINCHAM and MURRAY, JJ., concur.