JUTTA B. STONE, Plaintiff-Appellee, v. DANIEL F. McCARTHY, Defendant-Appellant.

First District (5th Division)   No. 1—88—3673

Opinion filed November 30, 1990.

Pedersen & Houpt, of Chicago (Arthur M. Holtzman and Gregory N. Kazarian, of counsel), for appellant.

Martha A. Mills and Celeste E. Kralovec, both of Gottlieb and Schwartz, of Chicago, for appellee.

PRESIDING JUSTICE COCCIA delivered the opinion of the court:

I

This case is before us a second time. In our first opinion, we reversed an order of the circuit court, which granted defendant Daniel F. McCarthy's motion to dismiss plaintiff Jutta B. Stone's amended complaint. On remand Stone, claiming that McCarthy had agreed to settle the case, filed a motion to enforce settlement. The circuit court granted Stone's motion, and McCarthy has appealed. We affirm for the reasons that follow.

II

The history of this case is set forth in *Stone v. McCarthy* (1987), 158 Ill. App. 3d 569, 511 N.E.2d 780 (*Stone I*), and we shall only revisit it as necessary for our present purposes. On July 7, 1986, Stone filed a verified amended complaint in chancery. She sought a constructive trust, injunctive relief, an accounting, and damages for breach of fiduciary duty. Stone alleged that McCarthy, as her agent, was to purchase an unimproved lot in Evanston for her, on which he had agreed to construct her a home. According to Stone, McCarthy announced that he intended not to convey title to her, but rather intended to keep the lot for his own personal use and benefit.

McCarthy filed a motion to dismiss Stone's amended complaint on July 21, 1986. Pursuant to section 2—619(a)(9) of the Illinois Code of

Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(9)), he argued that her amended complaint was barred by other affirmative matter, including lack of a writing between the parties and the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 1 *et seq.*).

The hearing on McCarthy's motion to dismiss was held before the Honorable Albert Green on August 18, 1986. Judge Green granted McCarthy's motion, finding that Stone had failed to allege facts sufficient to establish an agency relationship which would give rise to fiduciary obligations on McCarthy's part. And, even assuming that a fiduciary relationship existed, Judge Green ruled that agreements for the purchase of land had to be in writing.

Stone then appealed to this court. We rejected McCarthy's theory that the Statute of Frauds bars enforcement of any oral agreement for the purchase or conveyance of real property, concluding instead that the statute is not violated by the imposition of a constructive trust upon realty. We went on to hold that Stone's complaint contained sufficient allegations as to the existence of an agency relationship giving rise to fiduciary obligations on McCarthy's part to state a cause of action for breach thereof. Accordingly, we reversed the circuit court's order dismissing Stone's complaint and remanded the cause for further proceedings. See generally *Stone*, 158 Ill. App. 3d 569, 511 N.E.2d 780.

Back in the circuit court, Stone filed her motion to enforce settlement on August 3, 1988. Stone claimed that the parties entered into settlement discussions following the issuance of our opinion. During March of 1988, counsel for Stone (Celeste E. Kralovec) and counsel for McCarthy (Arthur M. Holtzman) agreed to settle the case for $9,000, assuming he received good title from the seller of the Evanston property. About March 21, 1988, Kralovec received from Holtzman a transmittal letter and draft settlement agreement. Shortly after receiving the draft, Kralovec spoke with Holtzman regarding the agreement. Kralovec wanted to change certain language, the motion continued, which Holtzman did not object to, as the revisions were not material. Kralovec desired to reduce the time within which McCarthy had to close from 90 to 60 days, and to give Stone the opportunity to step into his shoes if he did not close within that time. Kralovec also informed Holtzman that, because no *lis pendens* had been filed, language in the draft referring to the *lis pendens* should be removed. Before this conversation, the motion asserts, Holtzman did not know that no *lis pendens* had been filed. About April 13, 1988, Kralovec tendered to Holtzman a revised settlement agreement and requested his comments. Kralovec did not hear from Holtzman, and

her partner (Martha A. Mills) wrote to him on May 25, 1988, submitting the revised settlement agreement executed by Stone. About June 13, 1988, Holtzman returned the agreement with no explanation for McCarthy's failure to execute it. Since the settlement, the motion concluded, McCarthy had closed with the sellers of the Evanston property; thus, the issue of closing was irrelevant and the conditions of the settlement had been met, with the exception of payment to Stone. Consequently, Stone prayed that the circuit court enforce the settlement agreement and enter judgment in her favor and against McCarthy for $9,000.

The documents referred to in the motion to enforce were attached as exhibits to it. Exhibit A was Holtzman's letter to Kralovec, dated March 21, 1988, enclosing the draft settlement agreement and requesting her comments. Exhibit B was the draft settlement agreement, with Kralovec's handwritten revisions upon it. Exhibit C was Kralovec's letter of April 13, 1988, to Holtzman, informing him that pursuant to their conversation, she had made minor revisions to his draft. Kralovec concluded her letter by stating that she was prepared to tender Stone's executed agreement in exchange for McCarthy's executed agreement. Exhibit D was the revised draft, which accompanied Kralovec's letter. It reflects that she deleted a clause in the original draft which stated that Stone filed a notice of *lis pendens* with the Cook County recorder's office; similarly, Kralovec deleted a provision requiring Stone to terminate the *lis pendens* and record its termination. Paragraph 4 of the original draft read:

"If the Closing does not take place within 90 days of the execution of this Agreement, then the Escrow Agent shall return the Check to McCarthy, and this Agreement shall be null and void."

As revised by Kralovec, paragraph 4 provided:

"Unless otherwise agreed by Stone, if the Closing does not take place within 60 days of the execution of this Agreement, then the Escrow Agent shall return the Check to McCarthy and this Agreement shall be null and void, and either the litigation referred to previously shall proceed or Stone shall step into McCarthy's shoes as purchaser, at her option."

Exhibit E was Mills' letter to Holtzman, dated May 25, 1988, stating that she was sending him the executed revised draft, with the understanding that he would return it unless McCarthy agreed to and signed it. Lastly, exhibit F was Holtzman's letter to Mills, of June 13, 1988, reciting that he and his client had reviewed the revised settlement agreement and could not agree to it with the changes.

On August 3, 1988, the circuit court entered a briefing schedule, giving McCarthy until August 31, 1988, to respond to Stone's motion to enforce, her until September 14, 1988, to reply to his response, and setting the motion for hearing on September 20, 1988. On August 31, 1988, McCarthy filed his objection to her motion. McCarthy argued that the documents attached to Stone's motion did not evidence a settlement, but rather reflected negotiations between the parties' attorneys without a "meeting of the minds." McCarthy also contended that, because Kralovec's proposed revisions were material, the original offer had been rejected; in its place, Stone had submitted a counteroffer, which he was free not to accept.

On September 14, 1988, Stone filed a memorandum in support of her motion to enforce (reply). Stone retorted that when Holtzman and McCarthy learned that there was no *lis pendens* on the Evanston property, they proceeded to string her along, purchasing the property without paying the $9,000, contrary to their agreement. Therefore, they should be estopped from relying on any discrepancies between the original and revised agreements. Kralovec's affidavit was attached as an exhibit to the reply. In her affidavit, Kralovec stated that after receiving a copy of Holtzman's draft settlement agreement, she spoke with him regarding the provisions of paragraph 4 (quoted above). She expressed her concern that he could delay the closing 90 days from the date of execution, at which point the settlement would become null and void. Kralovec wanted some incentive for McCarthy to close within the agreed time period. According to her, Holtzman replied that the provision had been added for Stone's protection, and that he had no objection to a revision of the language to achieve this purpose. The revisions she made to paragraph 4 were designed solely to achieve what they had agreed was a legitimate purpose. Holtzman made no objection to the revisions, and Kralovec requested that her partner forward the signed copy of the agreement to him to complete the settlement, which Mills did in her letter of May 25, 1988. On June 13, 1988, Holtzman sent Mills the letter objecting to the settlement agreement, which had been in his possession for two months, without explaining his reasons for objecting. Finally, Kralovec affirmed, she later learned that McCarthy purchased the Evanston property on June 10, 1988.

The hearing on Stone's motion to enforce was held on September 20, 1988, before Judge Green. In response to Judge Green's questions, counsel for Stone and McCarthy agreed that they entered into settlement negotiations and that Holtzman drafted the original settlement agreement. Stone's counsel repeated their theory that once

Holtzman learned there was no *lis pendens* on the Evanston property, a decision was made to renege on the deal. Holtzman replied that Kralovec's revisions to the agreement were not minor, and instead represented material changes. Holtzman also opined that this court erroneously reversed Judge Green in *Stone I*, because we misunderstood the case. But Judge Green ruled:

"THE COURT: The law of this case is that I was wrong.

MR. HOLTZMAN: In this instance—

THE COURT: I will tell you something. This Court is not going to sit here and rewrite contract forms. But I'll tell you one thing: You drew the agreement and found no material changes were made. You had an oral agreement which you were trying to put down in writing; and you let the time go by and you didn't answer.

I'm going to see that that settlement agreement is enforced. You had an agreement; nothing changed.

You had an agreement to settle for $9,000 if he acquired the property, correct?

MR. HOLTZMAN: If he acquired the property—

THE COURT: He did acquire the property.

MR. HOLTZMAN: —during that time period.

THE COURT: Counsel, most respectfully, lawyers should not be made party to lawsuits by aiding and abetting. You made the agreement; you wrote it; you will live by it. You had an oral agreement.

This Court finds that there was no material change made in what you propose or call a counter-offer. A fait accompli occurred, you got the property; pay her the $9,000.

The enforcement on the oral basis will be enforced. The settlement agreement will be enforced."

On September 21, 1988, Judge Green entered an amended judgment order, which corrected minor drafting errors in the judgment order entered the day before. The amended judgment order provides that the settlement agreement was proposed and drafted by Holtzman; that the revisions proposed by Kralovec did not materially affect the agreement as originally proposed and drafted; that Stone agreed to the settlement as originally proposed by McCarthy; that Stone and McCarthy entered into an enforceable agreement to settle the cause upon the payment of $9,000 by McCarthy to Stone after he purchased the Evanston property; and that McCarthy purchased the property. Accordingly, Judge Green entered judgment in Stone's favor and against McCarthy for $9,000.

McCarthy moved to reconsider the amended judgment order on October 20, 1988. He argued, for the first time, that a settlement agreement may only be enforced after an evidentiary hearing and that no such hearing had been held in this case. McCarthy further contended, also for the first time, that as Kralovec's affidavit was not submitted with Stone's motion to enforce, but rather with her reply, he was unable to object to conclusory statements made in it or to provide a counteraffidavit. However, he did not submit a counteraffidavit with his motion. After Judge Green denied the motion to reconsider on November 16, 1988, McCarthy appealed to this court.

### III

On appeal, McCarthy assigns three principal errors regarding the circuit court's enforcement of the settlement. First, he argues, there was no basis for the court's finding that an enforceable oral agreement existed. Second, McCarthy contends that the court improperly considered Kralovec's affidavit which was submitted along with Stone's reply. Third, he asserts that there was no written settlement agreement. McCarthy concludes that the circuit court punished his "good faith" effort to resolve this dispute by compelling him to accept the settlement.

We shall address McCarthy's third objection first. In support of his theory that there was no written settlement agreement, McCarthy goes on to argue that Kralovec's changes to Holtzman's draft agreement represented a counterproposal, and that his offer, having been rejected, could not later be accepted by Stone. But Judge Green's remarks at the hearing, set forth above, indicate that he found the settlement agreement to be oral, in the process of being reduced to writing, rather than written. Thus, we need not dwell upon McCarthy's theory that there was no written settlement agreement.

We next consider McCarthy's contention that the circuit.court erroneously considered Kralovec's affidavit, submitted in support of Stone's reply. Specifically, McCarthy contends that as her affidavit was conclusory, it violated Illinois Supreme Court Rule 191(a). (See 107 Ill. 2d R. 191(a).) In addition, he urges that if parties are permitted to file affidavits with reply memoranda, rather than with initial motions only, the scope of such memoranda will be unduly expanded, pleadings will never end, and judicial resources will be taxed.

Generally, an objection should be made at the time of the action complained of, or at the first opportunity thereafter. (See 2 Ill. L. & Prac. *Appeal & Error* §212, at 260 (1953).) It is settled law that a party may not attack the sufficiency of an affidavit, pursuant to Su-

preme Court Rule 191(a), for the first time on appeal. In *Duffy v. Midlothian Country Club* (1980), 92 Ill. App. 3d 193, 199, 415 N.E.2d 1099, 1104, this court stated that an affidavit's sufficiency must be tested by a motion to strike it, or by a motion to strike the motion setting forth the objections to the affidavit. Here, Kralovec's affidavit was submitted, with Stone's reply, on September 14, 1988, before the hearing on her motion to enforce. At the hearing on the motion, held September 20, 1988, McCarthy had an opportunity to object to the allegedly conclusory affidavit, before the entry of judgment against him. Indeed, under section 2—1005(c) of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c)), he was entitled to file a counteraffidavit at the hearing, yet he did not do so. However, McCarthy did not object in any fashion to the affidavit's sufficiency until his motion to reconsider, which was filed on October 20, 1988, well after the entry of judgment. We conclude, then, that McCarthy waived his objection to the sufficiency of Kralovec's affidavit.

● 4 Like his argument that Kralovec's affidavit was conclusory, McCarthy did not argue that her affidavit was filed too late until his motion to reconsider, which he filed after the entry of judgment. He has identified no authority which forbids a movant from submitting an affidavit in support of a motion before the hearing thereon, in reply to the nonmovant's response to the motion. And McCarthy's argument—that if parties are not prohibited from filing affidavits with reply memoranda, the scope of such memoranda will be expanded, pleadings will never end, and judicial resources will be taxed—cuts both ways. Motion practice would never end if, as McCarthy maintains, nonmovants are permitted to withhold technical or procedural objections until after the entry of judgment against them; in fact, if McCarthy's view prevailed, nonmovants would have an incentive to withhold such objections, and save them for motions to reconsider, when the result of the hearing on the motion did not result in a ruling in their favor. Under McCarthy's regime, no hearing would ever be final. In cases such as this, where the nonmovant elects not to raise technical or procedural objections until after the hearing on the motion, and where he had the opportunity to do so before or during the hearing, it is the waiver rule that promotes the conservation, instead of the depletion, of judicial resources. That is, the rule does not put the motion judge in the position of having to reconsider previous rulings every time the losing party moves to reconsider based on matters not presented at the initial hearing. (Compare *Schierer v. Ameritex Division, United Merchants & Manufacturers, Inc.* (1980), 81 Ill. App. 3d 90, 95, 400 N.E.2d 1072, 1076 (rejecting losing party's argu-

ment that she had right to submit affidavit after entry of summary judgment against her, on grounds that trial judge is entitled to have everything before him which parties intend in support of their position before he makes a decision).) Like his challenge to the sufficiency of Kralovec's affidavit, therefore, we conclude that McCarthy waived his objection to the timeliness of her affidavit by not raising it until his motion for reconsideration.

■ Finally, we come to McCarthy's contention that there was no basis for Judge Green's finding that an enforceable oral settlement agreement existed. In particular, he contends that the settlement should not have been enforced because all questions of formation and terms were not resolved; that the parties' correspondence shows the absence of an oral agreement; and that the finding of a settlement without an evidentiary hearing was improper.

Taking the last point first, the record reveals that McCarthy did not object to the alleged lack of an evidentiary hearing until his motion to reconsider the entry of judgment against him. In one of the cases he relies on, *Janssen Brothers, Inc. v. Northbrook Trust & Savings Bank* (1973), 12 Ill. App. 3d 840, 299 N.E.2d 431, the appellate court reversed the circuit court's entry of judgment against the defendants pursuant to a settlement agreement. The *Janssen* defendants objected at the hearing, an informal procedure that did not include written pleadings or the taking of evidence. In our case, McCarthy made no such objection until after the hearing before Judge Green, at which written materials from both parties and Kralovec's affidavit were submitted. He also cites *Kwak v. St. Anthony De Padua Hospital* (1977), 54 Ill. App. 3d 719, 369 N.E.2d 1346. In *Kwak*, this court rejected the plaintiff's argument that the circuit court erred in not summarily dismissing her suit as having been settled, where she neither alleged that additional information would have been offered had a hearing been held, nor objected to the failure to hold a hearing. In addition to not requesting an evidentiary hearing in a timely fashion and not submitting any counteraffidavits or other evidence with his motion to reconsider, McCarthy has not indicated what sort of evidence he would introduce at such a hearing. We must hold, consequently, that McCarthy was not entitled to an evidentiary hearing.

■ Turning at last to the merits of Judge Green's ruling on the oral agreement, we note initially that the settlement of claims is encouraged as a matter of public policy. (See *Continental Illinois National Bank & Trust Co. v. Sax* (1990), 199 Ill. App. 3d 685, 694, 557 N.E.2d 475, 480.) A settlement agreement need not be in writing.

(See *Knoll v. Swanson* (1968), 92 Ill. App. 2d 398, 403, 234 N.E.2d 543, 546.) The plaintiffs in *Knoll*, for example, appealed from the circuit court's ruling that they and the defendants settled a cause of action by oral agreement of the parties and counsel. The appellate court affirmed, observing that the plaintiffs—like McCarthy here—presented no contrary evidence and no counteraffidavits to the trial court; in contrast, the defendants—like Stone here—attached correspondence between the parties, including letters of plaintiffs' attorney, to their motion to dismiss. The appellate court reasoned:

> "In the absence of mistake or fraud, such a settlement, adequately established in the record, is conclusive on the parties as to all matters included in the settlement and will not lightly be disturbed or set aside. No mistake of law or facts, or lack of understanding of the settlement, is shown here which would justify this court in disturbing the settlement agreement." (*Knoll*, 92 Ill. App. 2d at 404, 234 N.E.2d at 546.)

These considerations apply with equal force to our case.

In *McCracken Contracting Co. v. DePrizio & Associates, Inc.* (1984), 122 Ill. App. 3d 680, 462 N.E.2d 682, this court identified the equitable notions that govern interpretation of settlement agreements. The defendants in *McCracken* appealed from the circuit court's order granting summary judgment in accordance with an oral settlement agreement. We rejected the argument that the question of their diligence (in verifying an alleged balance due) was one of fact for the jury. In affirming the circuit court, we stated:

> "To hold otherwise based on this record would undermine the binding effect of oral settlement agreements and permit parties to casually enter into agreements to compromise and settle, only to change their minds later ***. *** It would erode the very foundations of equitable jurisprudence to hold that mistake grounded in negligent business practices such as are evident in this case could create a valid defense, and, thus, a genuine issue of fact. [Citation.]" *McCracken*, 122 Ill. App. 3d at 687, 462 N.E.2d at 687.

■ In light of the foregoing principles, we cannot say that Judge Green erred in enforcing the settlement. McCarthy would have us believe that Kralovec's revision, reducing the time within which he had to close from 90 to 60 days, was material. Yet in his brief he admits that he closed on the Evanston property on June 10, 1988, less than 60 days after the date of her letter (April 13, 1988), transmitting the revisions Holtzman previously agreed to. The other allegedly material change identified by McCarthy is that giving Stone the right to step

into his shoes if he did not close within 60 days. Again, as he did close within that time, we fail to see how the change could have been material. Contrary to McCarthy's assertion that the correspondence shows the lack of an oral agreement, it actually serves to bolster Stone's theory: that when he learned there was no *lis pendens* on the property, he saw an opportunity to buy the property and save $9,000, notwithstanding his promise to her. Judge Green was familiar with the facts of the case, and his remarks at the hearing suggest that he accepted Stone's version of the negotiations, in ruling that the parties were in the process of reducing an oral settlement agreement to writing. McCarthy's claim that the circuit court punished his good-faith effort to resolve this case by compelling him to accept the settlement is spurious, given the facts of record. In fact, to overturn Judge Green's ruling would have the effect of encouraging parties to act in bad faith, by casually entering into oral agreements to settle, secure in the knowledge that they could later change their minds and breach their promises. Such a result would be contrary to our reasoning in *McCracken*, for it would tend to undermine the foundations of equitable jurisprudence.

## IV

Because we have concluded that the circuit court properly enforced the settlement Stone and McCarthy agreed to, the amended judgment order is affirmed.

Affirmed.

LORENZ and MURRAY,* JJ., concur.

---

*Justice R. Eugene Pincham participated in this case prior to his resignation. Since that time, Justice James C. Murray was designated the third member of the panel, and he has read the record and briefs and has listened to the oral argument tapes.