2025 IL App (1st) 241248-U

FOURTH DIVISION
Order filed: November 13, 2025

No. 1-24-1248

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| RAVEN CARGO, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2023 L 0418 |
| | ) | |
| ARIF CAUSHAJ and ARIBET, LLC, | ) | Honorable |
| | ) | John J. Curry, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE QUISH delivered the judgment of the court.
Presiding Justice Navarro and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We reverse the circuit court's order granting summary judgment in favor of the plaintiff because the plaintiff failed to present sufficient admissible evidence of its damages to support its breach of contract and fraud claims.

¶ 2    Defendants Arif Caushaj ("Caushaj") and Aribet, LLC ("Aribet") (collectively, "defendants") appeal from the order of the circuit court of Cook County granting summary judgment in favor of plaintiff, Raven Cargo, Inc. ("Raven Cargo") and against defendants on both

counts of its amended complaint and awarding damages of $265,000. For the following reasons, we reverse and remand for further proceedings.

¶ 3    In November 2022, Aribet and Raven Cargo entered into a contract in which Raven Cargo agreed to broker freight shipments to Aribet, which would deliver the shipments to Raven Cargo's customers in exchange for payment. Caushaj, as director of operations, signed the contract on behalf of Aribet. The contract contained a provision stating that, in case of a delayed delivery, Aribet "shall be liable to [Raven Cargo] and/or its customers for all financial consequences arising from [Aribet's] failure to comply with such delivery dates and times." The contract also contained an indemnification provision, which provided that Aribet "will defend, indemnify and save [Raven Cargo] and/or [Raven Cargo's] customers harmless from any losses, harm, injuries, damages, claims, costs, expenses, and liabilities . . . ."

¶ 4    Under the terms of the contract, Raven Cargo and Aribet executed a "Load Confirmation" for each shipment that Raven Cargo brokered to Aribet, which included specifics about the cargo, special instructions for the delivery, and the amount that Raven Cargo would pay Aribet for its services. The Load Confirmation form contains additional terms, including a provision that Aribet must use Macropoint, a software program Raven Cargo used to track shipments.

¶ 5    Raven Cargo's amended complaint alleged two counts: (1) a breach of contract claim against Aribet; and (2) a fraud claim against Caushaj. Both counts related to a shipment that Raven Cargo tendered to Aribet on November 18, 2022. The Load Confirmation for the shipment states that Aribet was to pick up the shipment from Axalta Coating Systems ("Axalta") in Mount Clemens, Michigan at 8:00 p.m. on November 19, 2022, and deliver it to a General Motors plant in Arlington, Texas at 10:00 p.m. on November 20, 2022.

¶ 6    Count I alleged that Aribet breached the contract by failing to use a two-driver team to deliver the shipment, failing to deliver the shipment on time, submitting falsified documents stating that the delivery was completed, failing to use the Macropoint tracking software, and making false statements regarding the status of the delivery. Count II alleged that Caushaj made false statements to Raven Cargo that Aribet would use a team of drivers and the Macropoint tracking software to deliver the shipment on time. Raven Cargo further alleged that Caushaj made false statements regarding the status of the shipment and falsified documents stating that the shipment was completed on time. Raven Cargo alleged that it relied on Caushaj's false statements when it entered into the agreement with Aribet and when Aribet failed to take measures to remedy the damages caused by the late delivery. Raven Cargo alleged that it suffered $265,000 in damages under both counts because the delayed delivery caused a shutdown of the General Motors facility.

¶ 7    Raven Cargo filed a motion for summary judgment on both counts pursuant to Section 2-1005 of the Code of Civil Procedure, 735 ILCS 5/2-1005 (West 2024), arguing that Aribet breached the contract by delivering the shipment late and failing to indemnify Raven Cargo for the $265,000 claim Axalta brought against Raven Cargo. Raven Cargo further argued that Caushaj made fraudulent statements and falsified documents to Raven Cargo representing that the shipment had been delivered on time when it was not delivered until the following day. Raven Cargo attached the affidavits of two Raven Cargo employees, Kevin Lee and William Flanagan, to its motion.

¶ 8    In response, Defendants admitted that Aribet breached the contract by delivering the shipment late, but contested the damages sought by Raven Cargo and the sufficiency of Raven

- 3 -

Cargo's evidence to establish the fraud claim against Caushaj. Defendants did not dispute the facts in Raven Cargo's motion, which we will set forth below.

¶ 9     Aribet picked up the shipment from the Axalta plant in Michigan on November 19, 2022 and accepted the Macropoint tracking, but turned off the tracking shortly thereafter and failed to update Raven Cargo about the location of the load. At approximately 9:17 p.m. on November 20, 2022, Caushaj informed Raven Cargo that a team of Aribet drivers arrived at the General Motors plant. At approximately 2:00 a.m. on November 21, 2022, General Motors informed Raven Cargo that the shipment had not been delivered and could not be found.

¶ 10     Kevin Lee, Raven Cargo's Director of Carrier Sales, informed Aribet and Caushaj about the non-delivery. At approximately 6:11 a.m. on November 21, 2022, Caushaj told Raven Cargo that the load was delivered and provided Raven Cargo's dispatcher with proof of delivery. Caushaj also provided a description of the General Motors plant employee who accepted the shipment and the exact location where the shipment was delivered. General Motors was not able to locate the shipment, but Caushaj continued to insist that the shipment had been delivered. Raven Cargo and General Motors relied on Caushaj's statements about the delivery and continued to search the plant for the shipment.

¶ 11     At approximately 1:00 p.m. on November 21, 2022, a single Aribet driver arrived at the General Motors plant with the shipment. The proof of delivery sent to Raven Cargo had been falsified by Caushaj, who included a fake signature of a receiver to make it appear that the shipment was delivered on time. Caushaj also provided Raven Cargo with driver logs for two drivers who claimed to deliver the load on November 20, 2022. The driver's logs provided by Caushaj were

falsified because the load was delivered by a single driver on November 21 at 2 p.m. and not on the evening of November 20, as shown in the logs.

¶ 12    Caushaj's statements regarding the delivery and the falsified proof of delivery and driver logs forced Raven Cargo and General Motors to continue to look for the shipment between the evening of November 20, 2022 and the afternoon of November 21, 2022. Neither Raven Cargo nor General Motors attempted to order new material, preemptively shut down the plant, or otherwise attempt to replace the shipment due to their reliance on Caushaj's statements and documents. Aribet breached the contract by failing to make a timely delivery of the load, submitting falsified documents, failing to use the Macropoint tracking software and repeatedly lying about the delivery.

¶ 13    Aribet's breach resulted in a claim from Raven Cargo's customer, Axalta. Axalta filed a Loss or Damage Claim with Raven Cargo for the delayed delivery of the load, which resulted in the complete closure of the General Motors plant. Raven Cargo presented the claim to Aribet and demanded indemnification, but Aribet refused. Raven Cargo paid $265,000 to Axalta to satisfy the claim in the form of an offset against amounts that Axalta owed Raven Cargo. In support of its claimed damages, Raven Cargo attached a "Loss and Damage" form and a "credit note" from Raven Cargo to Axalta for $265,000.

¶ 14    In their response to Raven Cargo's motion for summary judgment, Defendants did not submit any counter affidavits, but argued, *inter alia*, that the damages sought by Raven Cargo were unsupported and speculative because the Loss and Damage form and credit note were unsworn and lacked any foundation or explanation.  Defendants also argued that the Loss and Damage form attributed the damages to Argus Logistics, a nonparty to the contract. Regarding the fraud claim,

Caushaj argued that judgment against him individually was unwarranted because all actions at issue were taken on behalf of Aribet.

¶ 15    On May 17, 2024, following a hearing, the circuit court granted Raven Cargo's motion for summary judgment and entered judgment in favor of Raven Cargo on Count I against Aribet for $265,000, and on Count II against Caushaj for $265,000. The record on appeal does not contain a transcript of the hearing.  Defendants appealed.

¶ 16    Defendants argue that we should reverse the summary judgment ruling because Raven Cargo's claimed damages were not foreseeable and the contract between the parties precluded consequential damages to a third party, Raven Cargo's claimed damages were speculative and not supported by admissible evidence, there were disputed issues of material fact with respect to the fraud claim, and Raven Cargo failed to show Caushaj's fraudulent representations were the legal cause of Raven Cargo's damages.

¶ 17    Summary judgment shall be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005 (West 2024). Summary judgment is a drastic means of disposing of litigation and should only be granted "when the right of the moving party is free and clear from doubt." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004); *Ahlgren v. Stonegate Insurance Co.*, 2025 IL App (1st) 240905, ¶ 27. We review an appeal from an order granting summary judgment *de novo*. *Beamon v. Freesmeyer*, 2019 IL 122654, ¶ 22.

¶ 18    First, with respect to the breach of contract claim, Aribet argues that summary judgment for Raven Cargo was improper because the parties' contract did not allow for incidental or

consequential damages to third- or fourth-party beneficiaries when such damages were not foreseeable. However, we agree with Raven Cargo that Aribet did not raise this argument in its response to Raven Cargo's motion for summary judgment and thus, forfeited it. *Evanston Ins. Co. v. Riseborough*, 2014 IL 114271, ¶ 39; *Andrews v. Carbon on 26th, LLC*, 2024 IL App (1st) 231369, ¶ 24.

¶ 19    Next, Aribet concedes that the parties had a valid and enforceable contract, Raven Cargo substantially performed under that contract and Aribet breached it.  See *Ivey v. Transunion Rental Screening Solutions, Inc.*, 2022 IL 127903, ¶ 28.  Aribet argues, however, that Raven Cargo's claimed damages were speculative and unsupported by admissible evidence because neither Raven Cargo's employees' affidavits nor the exhibits attached thereto comply with Supreme Court Rule 191(a).  Thus, Aribet argues, Raven Cargo did not establish the fourth element of its breach of contract claim, damages caused by Aribet's breach.

¶ 20    Raven Cargo responds that Aribet forfeited any objection to the sufficiency of the affidavits by failing to move to strike them in the circuit court. Although Raven Cargo is correct that, generally, the sufficiency of affidavits cannot be tested for the first time on appeal, Aribet did object to the sufficiency of Raven Cargo's affidavits and their non-compliance with Rule 191(a) in its response to Raven Cargo's motion for summary judgment.  Thus, this argument is not forfeited. See *Essig v. Advocate BroMenn Medical Center*, 2015 IL App (4th) 140546, ¶ 93; *Arnett v. Snyder*, 331 Ill. App. 3d 518, 523 (2001). Contrary to Raven Cargo's argument, a motion to strike an opposing party's affidavit is not required to preserve a challenge to that affidavit. See *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 648 (2002) ("[A]lthough neither party filed a

written motion to strike affidavits submitted by the other, the absence of such a motion does not preclude this court's *de novo* review of the sufficiency of those affidavits.").

¶ 21 Raven Cargo argues that, in order to preserve a challenge to the sufficiency of an affidavit under Rule 191(a), defendants were required to file a motion to strike the affidavit or the motion for summary judgment, citing *Stone v. McCarthy*, 206 Ill. App. 3d 893 (1990). We find *Stone* to be distinguishable. In *Stone*, the defendant argued on appeal that the circuit court erroneously considered an affidavit that was submitted for the first time in the plaintiff's reply brief to support plaintiff's motion to enforce a settlement. *Id.* at 899-900. This court found that the defendant had "an opportunity to object to the allegedly conclusory affidavit" at a hearing and "was entitled to file a counter-affidavit at the hearing, yet he did not do so." *Id.* at 900. This court found that the defendant's objection to the affidavit was waived because he "did not object in any fashion to the affidavit's sufficiency until his motion to reconsider." *Id.*

¶ 22 Here, defendants' response to Raven Cargo's motion for summary judgment cited Rule 191(a) and argued that Raven Cargo's evidence related to damages was unsworn and lacked a sufficient foundation. Defendants specifically argued that the Loss and Damage claim form lacked any foundation, supporting schedules or invoices and was insufficient to establish that Raven Cargo was entitled to $265,000 in damages, the same argument raised in this appeal. Unlike the defendant in *Stone*, defendants raised their objection before the circuit court's hearing and ruling on Raven Cargo's motion for summary judgment. Thus, we find that defendants sufficiently raised this issue before the circuit court to preserve it on appeal.

¶ 23 Even if defendants had not preserved their challenge to the evidence attached to Raven Cargo's motion for summary judgment, we may still review the admissibility of those documents.

Any evidence that would be inadmissible at trial cannot be considered in support of a motion for summary judgment "even if the other party failed to object." *Ruda v. Jewel Food Stores, Inc.*, 2024 IL App (1st) 230582, ¶ 46. "Given the purpose of summary judgment, a party's failure to object when the other party cites clearly inadmissible facts or opinions does not mean that the trial court must accept those facts or opinions[.]" *Essig*, 2015 IL App (4th) 140546, ¶ 89.

¶ 24 At the summary judgment stage, it is the moving party's burden to support their entitlement to judgment with admissible evidence. *Complete Conference Coordinators, Inc. v. Kumon North America, Inc.*, 394 Ill. App. 3d 105, 108 (2009). Documents attached to a motion for summary judgment must be authenticated and an adequate foundation must be laid for their admission. *Id.*; *CCP Ltd. Partnership v. First Source Financial, Inc.*, 368 Ill. App. 3d 476, 484 (2006). To admit a document, the proponent must present evidence "to demonstrate that the document is what its proponent claims it to be." *Anderson v. Human Rights Comm'n*, 314 Ill. App. 3d 35, 42 (2000). "Without proper authentication and identification of the document, the proponent of the evidence has not provided a proper foundation and the document cannot be admitted into evidence." *Complete Conference Coordinators, Inc.*, 394 Ill. App. 3d at 108 (quoting *Anderson*, 314 Ill. App. 3d at 42).

¶ 25 Additionally, affidavits provided in support of a motion for summary judgment must comply with Supreme Court Rule 191(a), which requires that such affidavits "shall be made on the personal knowledge of the affiants; shall set forth with particularity the facts upon which the claim" is based, "shall have attached thereto sworn or certified copies of all documents upon which the affiant relies; shall not consist of conclusions but of facts admissible in evidence" and "shall

affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." Ill. Sup. Ct. R. 191(a) (eff. Jan. 4, 2013).

¶ 26    We agree with Aribet that the Loss and Damage form and credit note attached to Raven Cargo's motion for summary judgment lack any foundation or authentication and are inadmissible. The Loss and Damage form lists the claimant as "Argus Logistics." The form asserts a total claim of $277,000, including $265,000 for "General Motors Arlington, TX Shutdown 6 Hours," with a quantity of "220," and price of "1200," totaling $265,000 and "legal service" of an additional $12,000.  There is no explanation as to any of these terms or amounts in the Loss and Damage form itself or in Flanagan's affidavit. This form states the following in the "charge comments" section: "Gross negligence coupled with fraudulent documentation resulting in plant shutdown." There is no date listed for that shutdown. The form contains a section for "Preparer's Name," and signature line for "Claims Administrator."  However, both sections are blank.  This form also references "supporting documentation" of "Raven Claim Form.docx," but no such document is attached to the form or Raven Cargo's motion for summary judgment.

¶ 27    The second document is entitled "Credit Note," addressed from Raven Cargo to "Axalta Coating Systems c/o Argus Logistics" and dated March 3, 2023. The note lists many invoice numbers dating back to 2021 under a column stating "Order ID," with two other columns for "Invoice Total" and "Credited Amount" in varying dollar amounts. The columns add up to a total amount of $265,000.

¶ 28    Both documents were mentioned only in Flanagan's affidavit. Specifically, Flanagan, Chief Compliance Officer of Raven Cargo, averred that "Axalta Coating Systems filed a Loss or Damage Claim with Raven Cargo for delayed delivery of the Load, which resulted in the complete

closure of the General Motors Plant" and a "copy of the Presentation of Loss or Damage Claim is attached as Exhibit 7." For the credit note, Flanagan states that Raven Cargo paid $265,000 to Axalta to satisfy the claim in the form of an offset charged against amounts due and owing to Raven Cargo from Axalta for the transportation of other loads. He further states: "A copy of the Credit Note showing the payment and its application against invoices is attached as Exhibit 8."

¶ 29    We find that both documents do not comply with Rule 191(a) and lack any adequate foundation and thus, could not support Raven Cargo's motion for summary judgment. Neither form is sworn or certified, as required by Rule 191(a). Ill. Sup. Ct. R. 191(a). Further, Flanagan does not authenticate either document in his affidavit. He also does not establish who created each document, how or when they were created or provide any other information sufficient to lay an adequate foundation for the documents or to establish their authenticity. Also, the Loss and Damage form lists the claimant as "Argus Logistics," which contradicts Flanagan's statement that Axalta filed the claim. Flanagan does not address this discrepancy let alone explain it. He also does not even mention Argus Logistics or explain how it is connected to either Raven Cargo or Axalta. Flanagan further avers that Axalta was Raven Cargo's customer, yet fails to explain why Argus Logistics filed this claim. Also, the Loss and Damage form is unsigned and bears no indication that it was submitted to Raven Cargo, when it was submitted or how.

¶ 30    While Flanagan testified that he has personal knowledge of the circumstances surrounding "the problems with the delivery of the load, and the resulting claim," he does not articulate the basis of his knowledge that the General Motors plant was shut down as a result of the delayed delivery or state how the delayed delivery or Caushaj's false statements resulted in damages to Raven Cargo of $265,000. See *Gardner v. Navistar Intern. Transp. Corp.*, 213 Ill. App. 3d 242,

248 (1991) ("If [the affiant] were called to testify about the matters in his affidavit, he would be unable to provide *admissible* testimony as to the *substantive content* of the exhibits he attached to his affidavit.") (emphasis in original).

¶ 31　Raven Cargo does not address the admissibility of these documents in its appellee's brief, but to the extent Raven Cargo attempted to admit these documents as business records of Raven Cargo, it failed to do so. A proponent of a business record must demonstrate that the records were made (1) in the regular course of business; (2) at or near the time of the event or occurrence; and (3) that it was in the regular course of business to maintain such a record. Ill. R. Evid. 803(6) (eff. Jan. 25, 2023); *US Bank, Nat. Ass'n v. Avdic*, 2014 IL App (1st) 121759, ¶ 23. Flanagan's affidavit contains no facts to support any of these three elements as to either document. The Loss and Damage form appears to have been created by Argus and not Raven Cargo. Flanagan provides no testimony to show how this is a Raven Cargo business record. He provides no facts from which the court could determine that either document was a business record of Raven Cargo. Accordingly, Raven Cargo failed to lay a sufficient foundation to admit either of these documents and thus, they could not support Raven Cargo's motion for summary judgment.

¶ 32　Raven Cargo argues that summary judgment was proper because defendants failed to provide any evidence to rebut Raven Cargo's documents. However, even when a party opposing summary judgment fails to provide counter-affidavits or otherwise respond to the evidence provided in support of the motion, the moving party should not be granted summary judgment unless the evidence provided in support of the motion establishes its entitlement to judgment as a matter of law. *T.E.C. & Assoc., Inc. v. Alberto-Culver Co.*, 131 Ill. App. 3d 1085, 1090 (1985). This requires the moving party to submit admissible evidence. *Complete Conference*

*Coordinators*, 394 Ill. App. 3d at 108. Here, Raven Cargo failed to provide admissible evidence to prove that, as a matter of law, it was entitled to a judgment of $265,000 against Aribet due to Aribet's breach of contract. Therefore, we reverse the circuit court's grant of summary judgment in favor of Raven Cargo on Count I of the amended complaint.

¶ 33    As to Count II, fraud, Caushaj argues that summary judgment to Raven Cargo was not proper because there are genuine issues of material fact.  He relies exclusively on his denial of Raven Cargo's allegations of fraud in Caushaj's answer to the amended complaint. First, Caushaj did not raise this argument in response to Raven Cargo's summary judgment, and therefore, it is forfeited. *Evanston Ins. Co.*, 2014 IL 114271, ¶ 39; *Andrews*, 2024 IL App (1st) 231369, ¶ 24. Even if Caushaj had not forfeited this argument, we would reject it. A denial in an answer to the complaint is not sufficient to create a genuine issue of material fact to avoid summary judgment. *Parkway Bank and Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 49.

¶ 34    Caushaj next argues that, even if there are no disputed issues of material fact, Raven Cargo failed to establish he committed fraud. To prove common law fraud, a plaintiff must show that (1) defendant made a false statement of material fact; (2) defendant knew the statement was false; (3) defendant intended to induce the plaintiff to act in making the false statement; (4) the plaintiff relied on the statement; and (5) the plaintiff suffered damages resulting from their reliance on the false statement. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 496 (1996).

¶ 35    We need not address Caushaj's arguments regarding the first four elements because we agree with him that Raven Cargo failed to establish the element of damages. Raven Cargo relies on the same documents and evidence to support its entitlement to summary judgment for both counts of its amended complaint. Because we find that Raven Cargo failed to present any

admissible evidence of damages, we also reverse the circuit court's order granting summary judgment to Raven Cargo on Count II of the amended complaint.

¶ 36    For the foregoing reasons, we reverse the circuit court's grant of summary judgment to Raven Cargo on both counts of its amended complaint and remand for further proceedings.

¶ 37    Reversed and remanded.